385 F.Supp. 1001 (1974)
Donna HARPER, Plaintiff,
v.
TRANS WORLD AIRLINES, INC., Defendant.
No. 71 C 737 (3).
United States District Court, E. D. Missouri, E. D.
November 14, 1974.
Frank Susman, Susman, Schermer, Willier & Rimmel, St. Louis, for plaintiff.
Veryl L. Riddle, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
WANGELIN, District Judge.
This matter is before the Court for decision on the merits following the trial to the Court sitting without a jury.
Plaintiff, Donna Harper, (herein Harper) brought this suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C., § 2000e et seq., against defendant, Trans World Airlines, Inc., (herein TWA) on the grounds that she was discharged by the defendant on the basis of her sex, which was a violation of the aforecited Statute. Plaintiff prays for relief in the form of payment of lost wages, and reasonable attorneys fees. The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

*1002 Findings of Fact

1. This Court has jurisdiction over the subject matter of this suit and the parties hereto pursuant to 42 U.S.C. § 2000a-6.
2. Plaintiff, Mrs. Donna Harper, then unmarried, was employed by TWA in October of 1969 as a telephone sales agent in the Reservations, Sales and Service department located in St. Louis, Missouri. Mrs. Harper held this position on a part-time basis until she was discharged by the Company on June 30, 1971.
3. Approximately 375 individuals were employed in the office where plaintiff worked, receiving telephone calls from the general public concerning travel reservations and other inquiries connected with air travel. The department served a multi-state area and operated 24 hours a day, 7 days a week, 365 days a year.
4. Plaintiff met John Harper in July of 1970. Mr. Harper was also an employee of TWA working in the same department as plaintiff. Plaintiff married John Harper on May 29, 1971.
5. Prior to her marriage to Mr. Harper, plaintiff became aware of the TWA policy which did not permit relatives, including a husband or wife, to work within the same department. Plaintiff asked her immediate supervisor, Mr. Newsome, about this policy and was informed that, following her marriage, either she or her husband would have to make a decision as to which one of them would transfer out of the department or take a leave of absence or resign. She was further informed that if either she or her husband could not or would not agree among themselves as to which one would leave the department, then (assuming no transfer options were available) TWA would terminate that employee having the least amount of seniority.
6. After she returned from her honeymoon, Mrs. Harper engaged in a series of discussions with the head of the department, Nicholas J. Smith, requesting that an exception be made in her case. Defendant TWA declined to make an exception and again advised the Harpers that one or the other of them, at their election, would have to transfer (if any openings were available), take a leave of absence or resign, and, if they could not or would not decide for themselves as to which one would leave the department, then TWA would terminate the one with the least seniority 30 days following their marriage. The reasons for the defendant's policy were explained to plaintiff at these meetings.
7. Neither Mr. or Mrs. Harper notified TWA of any election, and accordingly, TWA terminated the plaintiff, Mrs. Harper, on June 30, 1971. It is undisputed that the plaintiff had the least amount of seniority with TWA, and as a part-time employee, was making less money than her husband.
8. The actual policy in effect for TWA at the time of the Harper's marriage was contained in TWA's Management Policy & Procedure Manual which, in relevant part, provided that:
The employment of two or more persons in the same family is permitted. However, if such persons are to be employed in the same Region or Department prior written approval must be obtained from the Region or Department Head . . . for purposes of this regulation "Family" shall be defined as including an employee's spouse, children, other dependent minors, parents, stepparents . . . sisters, brothers . . . (defendant. Ex.B)
9. The head of the Reservations, Sales and Service department, Nicholas J. Smith, testified that in 1968 shortly after he assumed the position as head of the department, he established a policy that the future employment of relatives in the same department would not be permitted. At that time, however, he knew that there were a few relatives employed within the department, but he felt that *1003 it would be unfair to employ the policy retroactively. In deciding not to permit the employment of relatives, including a husband or wife, within the same department, Smith based his decision upon a number of factors. He testified that there were no offsetting benefits to be gained by the employment of relatives, but based upon his many years of managerial experience, he felt that there were substantial disadvantages to employing relatives within the same department.
10. Based upon Mr. Smith's persuasive testimony, this Court finds that a number of opportunities for potential work conflicts exist when relatives are employed in the same department or office. Since the Reservations department operates around the clock, 365 days a year, employees are always concerned with what shift they might be assigned to, as well as what days off they might be allotted. Accordingly, if a husband and wife were employed within the same department, they would naturally attempt to arrange similar working schedules and, if they were unable to do so because of company needs, this might have an adverse effect upon their performance or cause inconvenience to the company in attempting to accommodate their requests. Illness or death in the family could similarly result in two absences with the resulting doubled problems to the defendant rather than one absence. Promotional situations also presented another potential area of conflict as, for example, one employee supervising the other or one employee receiving or being passed over for promotion. Finally, the close proximity in which employees worked in the Reservations department might prove distracting because it afforded ample opportunity to discuss personal matters and other family problems. Based on the foregoing considerations, Smith decided not to permit the future employment of relatives within the department. He decided that if the relationship was created by marriage, the couple would be informed that, at their option, one or the other would have to leave the department and that if the couple were unable or unwilling to agree as to whom would leave, defendant TWA would terminate the one with the least seniority. Transfer options or leave of absence options would also be offered.
11. This policy was developed and administered in good faith. The Court finds that the policy was consistently followed until it was modified on July 3, 1973.
12. The Court finds that the policy was not designed to discriminate against men or women and, in fact, it did not have such effect. The policy was enacted to achieve legitimate business purposes and objectives and represented what defendant TWA considered effective measures taken to obtain these objectives, i. e., effectiveness of employee performance, and not for any discriminatory purpose or design forbidden by the act.

Conclusions of Law
In a bench tried case such as this one, it becomes the Court's responsibility to determine, from the totality of the circumstances and the proof thereof, whether or not Mrs. Harper was terminated on the basis of her sex, which would be a violation of the statute under which this action is brought. In all cases brought under the aegis of the Civil Rights Act of 1964, the burden of proof falls upon the plaintiff to prove by a preponderance of the evidence that the acts complained of were discriminatory.
Mrs. Harper's contention in this case is that while the regulation of defendant TWA is not discriminatory as to sex on its face, the effect of that regulation is sexual in nature. The plaintiff seeks to come within the ambit of Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), but the Griggs case is distinguishable on factual grounds from the present case at bar. In Griggs, the Supreme Court considered the totality of the circumstances, *1004 and the historical factors which led to a higher disqualification for promotion for blacks as opposed to whites. The totality of the circumstances in Griggs pointed invariably in one direction, that is, that in all instances blacks were discriminated against, and the entire mechanism and reasons of the defendant were to discriminate against blacks, no valid business reasons were shown whatsoever for defendant's actions.
In the present case, the procedures of TWA were not: "employment procedures . . . that operate [d] as `built-in head winds' for minority groups and are unrelated to measuring job capability", 401 U.S. at 432, 91 S.Ct. at 854. The evidence produced at trial by defendant TWA leaves this Court with no other conclusion other than there were sound and valid business reasons for TWA's policy of termination of family members. These sound business reasons certainly would remove this case from the parameters of Griggs.
Plaintiff attemped to show that notwithstanding these sound business reasons of defendant that from a statistical standpoint the effect of TWA's policy was to discriminate on the basis of sex. However, plaintiff's examples are not numerous enough nor persuasive to indicate to this Court that the policy of TWA was indeed discriminatory. Ochoa v. Monsanto Company, 473 F.2d 318 (5th Cir., 1973).
It has long been held that an employee may be discharged for good reason, bad reason, or no reason, absent discrimination. Tims v. Board of Education of McNeil, Arkansas, 452 F.2d 551, 552 (8th Cir., 1971). When the afore-stated tenet is considered with the valid business reasons advanced by TWA it becomes a foregone conclusion that plaintiff's complaint is not viable. Accordingly, judgment will be entered for the defendant.