Donna HARPER, Appellant,

v.

TRANS WORLD AIRLINES,
INC., Appellee.

No. 75–1039.

United States Court of Appeals,
Eighth Circuit.

Argued Sept. 10, 1975.

Decided Nov. 18, 1975.

Robert H. Kubie, St. Louis, Mo., for appellant.

Thomas C. Walsh, St. Louis, Mo., for appellee.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and VAN PELT,* Senior District Judge.

GIBSON, Chief Judge.

Plaintiff, Donna Harper, appeals from an adverse judgment by the District

* The Honorable Robert Van Pelt, United States Senior District Judge for the District of Nebraska, sitting by designation.

Court[1] in a non-jury trial. Her sole contention on appeal is that the rule implemented in a regional office of defendant, Trans World Airlines, Inc. (TWA), which proscribed the employment of spouses in the same department, constituted sex discrimination and contravened Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* (1970), *as amended*, 42 U.S.C. § 2000e *et seq.* (Supp. III, 1973).

The facts of the case are fully set forth in the District Court's opinion, *Harper v. Trans World Airlines, Inc.*, 385 F.Supp. 1001 (E.D.Mo.1974), and will be repeated only to the extent that they are relevant to the matters discussed herein. Plaintiff was employed as a regular part-time sales agent on October 20, 1969, in the Reservations Department of defendant's St. Louis Passenger Sales and Service Division (St. Louis Division). Prior to and during plaintiff's employment, defendant's Management Policy and Procedure Manual prohibited the employment of spouses within the same department unless the head of the department had given prior written approval to the continued employment of both spouses.[2] In 1968, Nicholas Smith, who managed the Reservations Department in the St. Louis Division, adopted the policy that he would systematically refuse to permit married couples to work together in his department. When departmental co-workers were married, Smith allowed them to continue employment for 30 days, during which time they could agree as to which spouse would choose to voluntarily transfer to another department, take a leave of absence or terminate employment. If an agreement had not been reached by the spouses at the end of the 30 day period, Smith would discharge the spouse who had less seniority.

On May 29, 1971, plaintiff married John Harper, who worked in the same department and had been employed by defendant since May, 1967. Plaintiff and Harper sought permission from Smith to continue working together, but permission was refused. The couple had not informed Smith by June 30 as to which spouse had been designated to voluntarily transfer, terminate or take a leave of absence. Consequently, plaintiff was released since her husband had greater seniority.

Plaintiff contends that the application of defendant's policy has a "disparate effect" upon women. She concedes that there was no conscious purpose to restrict female employment in the St. Louis Division through the enforcement of defendant's rule. However, she contends that such a "facially neutral" rule is discriminatory since it will predictably induce more women than men to voluntarily terminate for two reasons: (1) the wife will generally produce less income than the husband, thus the detrimental effect on family income will be less if the wife terminates; (2) the job market is generally inhospitable to females and they can only gain and maintain employment in low paying capacities with limited promotional opportunities, thus they have less incentive than men to retain their employment. *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974). Plaintiff concludes by arguing that since more women than men will be adversely affected by the invocation of defendant's rule, the burden shifts to defendant to prove that the discriminatory rule is necessary for the operation of the business.

The defendant contends, and the trial court found, that defendant's policy did not discriminate against women in purpose or effect and that there were sound business reasons for promulgating such a rule. *Harper v. Trans World Airlines, Inc., supra* 385 F.Supp. at 1003–04.

---

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern and Western Districts of Missouri.

2. This policy was abrogated on July 1, 1973. The present policy permits the employment of spouses in the same department so long as one does not exercise direct supervision over the other.

Section 703(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) (1970), *as amended*, 42 U.S.C. § 2000e–2(a) (Supp. III, 1973), provides:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex * * * ; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's * * * sex * * *.

The purpose of these provisions is to afford the courts an instrument with which they can assure that all employment decisions are based on other than proscribed statutory discriminatory grounds. The Supreme Court has cautioned that section 703(a) cannot be utilized to give preferential treatment to an individual merely because of membership in a protected class.

> [T]he Act does not command that any person be hired simply because he was formerly the subject of discrimination * * *. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification.

*Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

▮▮▮ In order to successfully maintain a Title VII action, the plaintiff must initially prove that the practices of the employer have a discriminatory effect. While the employer is not necessarily vindicated merely because he lacks the intent to discriminate, *Rogers v. International Paper Co.*, 510 F.2d 1340, 1344 (8th Cir.), *vacated and remanded on other grounds*, —— U.S. ——, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975), he will be absolved if the plaintiff fails to prove a discriminatory effect upon a protected class. If discrimination is not shown, the judicial inquiry ends. However, if the plaintiff proffers sufficient evidence to show discrimination, the burden shifts to the defendant to present acceptable and legitimate business reasons for his discriminatory practice. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In regard to sex discrimination, the defendant is statutorily protected if sex is shown to be a "bona fide occupational qualification reasonably necessary to the normal operation of that particular business * *." 42 U.S.C. § 2000e–2(e)(1) (1970).

This case does not present the type of overt discrimination found when an employer refuses to hire or discharges an individual merely because of that individual's sex. *Cf. Diaz v. Pan American World Airways, Inc.*, 442 F.2d 385 (5th Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). Furthermore, defendant's rule did not expressly operate to adversely affect the employment of married females to the exclusion of married males. *Cf. Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir.), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971); 29 C.F.R. § 1604.4 (1974). Plaintiff attempts to classify defendant's practice as a form of covert discrimination which arises when a "facially neutral" employment practice is shown, in its application, to have an adverse effect upon a class protected by Title VII. The Supreme Court has recognized that Title VII condemns "not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs v. Duke Power Co., supra* 401 U.S. at 431, 91 S.Ct. at 853. In *Griggs*, the Court struck down an employer's use of certain apti-

tude tests when they were shown, by substantial and credible evidence, to have engendered discriminatory treatment concerning the hiring and transfer of blacks. *Griggs v. Duke Power Co., supra* at 430 & n. 6, 91 S.Ct. 849. This court has utilized the *Griggs* rationale to conclude that various "facially neutral" employment practices induced or perpetuated discrimination when sufficient evidence was adduced showing that fact. *Holthaus v. Compton & Sons, Inc.,* 514 F.2d 651 (8th Cir. 1975); *Wallace v. Debron Corp.,* 494 F.2d 674 (8th Cir. 1974); *United States v. N. L. Industries, Inc.,* 479 F.2d 354 (8th Cir. 1973).

■ Plaintiff purports to analogize her situation to *Griggs* by asserting that enforcement of defendant's rule will predictably result in the voluntary discharge of more women than men and, thus, is sexually discriminatory.[3] However, we conclude that plaintiff is not entitled to avail herself of the protective shield of *Griggs* because she has failed to prove, by statistics or other probative evidence, that defendant's rule adversely affected women.

■ The record shows that, prior to plaintiff's termination, five married couples had been subjected to the rule prohibiting employment of spouses. In four of the cases, the wife voluntarily chose to cease employment. While statistics may not be a determinative factor in an individual, as opposed to a class action, discrimination case, *King v. Yellow Freight System, Inc.,* 523 F.2d 879, 882 (8th Cir. 1975), they may often be probative and supportive of an individual employee's allegation that an employer has discriminated against him or her on impermissible grounds. *Cf. Naraine v. Western Electric Co.,* 507 F.2d 590, 594 (8th Cir. 1974). However, statistical evidence derived from an extremely small universe, as in the present case, has little predictive value and must be disregarded. *Robinson v. City of Dallas,* 514 F.2d 1271, 1273 (5th Cir. 1975). The trial court properly concluded that plaintiff's statistical proof was unpersuasive.

Plaintiff further contends that the disparity of earning power between males and females will cause a disproportionate number of wives to terminate employment. Initially, plaintiff has failed to present any persuasive evidence indicating that husbands would generally tend to earn more than their spouses in defendant's St. Louis Division.[4] Moreover, this argument presupposes that income will be the sole or dominant factor in the decision concerning which spouse will cease working with defendant after marriage. This premise has not been proven and it cannot be accepted as a general axiom. When confronted with the decision to terminate one or the other, it is likely that the spouses will consider and weigh a number of multifarious considerations. These will include their respective training, education and experience; the availability of alternate employment; the degree of satisfaction with the present job; the probability of advancement and the amount of seniority; the desire to pursue further education or seek additional training in the same or unrelated fields; and other various unarticulated considerations and subjective predilections. On the present record, plaintiff has failed to establish any relationship between the respective incomes

3. On this appeal, plaintiff does not contend that the invocation of the rule which discharges the spouse with less seniority after 30 days of marriage is discriminatory. She argues only that the rule will force more women than men to voluntarily terminate within the 30 day period. Consequently, there is no need to discuss any aspect of the seniority provisions.

4. At the time of plaintiff's termination, there were 432 employees on TWA's Personnel Roster, of which approximately 85 percent were women. Plaintiff deemed it significant that 23 of the top 28 high paying executive positions were staffed by males. However, there was a greater number of men (25) in the two lowest paying categories in TWA. Consequently, in any conjugal relationship between co-workers, there was a greater than equal chance of a woman marrying a man whose income varied insignificantly from hers rather than a man whose income was substantially higher.

of the spouses and who will remain in defendant's employ.

Plaintiff alleges that within the complement of defendant's employees, the top supervisory and managerial positions are occupied predominantly by males; consequently, the wife will recognize her inhibited promotional capabilities and will terminate to afford her husband the opportunity to capitalize upon his enhanced chances for advancement. Initially, this argument lacks merit since, as the foregoing discussion illustrates, the possibility of promotion for each respective spouse is merely one of several factors that the husband and wife will necessarily consider in making their decision as to which will terminate.

Furthermore, plaintiff's allegation that women were unable to pierce the upper echelons of defendant's management structure is not supported by the evidence presented at trial. Defendant's Personnel Roster shows that, at the time plaintiff was terminated, females occupied 53 percent of the positions earning $10,020 and above (the top 18 percent of the work force). Women staffed 21 percent of the top 29 supervisory positions in defendant's St. Louis Division. These statistics manifest the fact that females were not foreclosed from upward mobility into supervisory and other high salaried positions with defendant, particularly since the present record is devoid of any evidence showing that defendant engaged in any discriminatory hiring or promotion practices or that women were subject to restricted advancement opportunities. The inescapable conclusion based upon the whole record is that the individuals occupying the top positions with defendant achieved and maintained their status on the basis of seniority, superior qualifications, manifested managerial talent or other nondiscriminatory determinants. No facts adduced at trial

demonstrated that qualified women were intentionally bypassed pursuant to discriminatory promotion practices of defendant. In the absence of proof to the contrary, we can only assume that a man and a woman with equal qualifications would be given equal promotional consideration with defendant. Thus, the wife should be under no compulsion to terminate on this particular ground.

Finally, plaintiff attempts to support her allegation of sex discrimination by alluding to the disparity of wage-earning capabilities between men and women and by asserting that, through either "overt discrimination or from the socialization process of a male-dominated culture, the job market is inhospitable to the woman seeking any but the lowest paid jobs." *Kahn v. Shevin, supra* 416 U.S. at 353, 94 S.Ct. at 1736. Even if we were to take judicial notice of these conditions generally, they would not be supportive of plaintiff's position in this case.[5] *Kahn* discussed the paucity of female employment opportunities throughout the United States as a whole and, on the basis of these general statistics, held that a Florida property tax exemption limited to widows was not constitutionally infirm. However, our inquiry in the present case is limited to the employment conditions within the sphere of employment affected by defendant's rule since it is within this particular sphere that the rule's enforcement has allegedly affected females in an adverse manner. The general statistics and conditions discussed in *Kahn* are relevant only to the extent to which they are shown to apply at defendant's St. Louis Division. Subject to such circumspection, we conclude that there has been no statistical data or other proof that defendant engaged in sexually discriminatory employment practices or exacerbated the general job market "inhospitality" to women. When plaintiff was terminated, defendant's St.

---

**5.** In fact, the hostile job market for women in the United States recognized in *Kahn* is one factor which may induce more husbands than wives to voluntarily terminate pursuant to defendant's rule. When forced to make a decision, a married couple may decide that the wife should remain with defendant due to her difficulty in obtaining employment elsewhere.

Louis Division was comprised of approximately 85 percent females. There was no evidence offered at trial which would tend to show that women were relegated to low paying positions irrespective of their qualifications or that men were given initial positions which were higher than those given to women with comparable experience and qualifications. As indicated above, the record does not reveal that female promotional opportunities were restricted. Since plaintiff has failed to show that the general conditions discussed in *Kahn* existed in defendant's St. Louis Division, that case is inapposite.

■ In sum, plaintiff has failed to present probative evidence to support her allegation that defendant's rule induces sex discrimination. It is clear that Title VII actions cannot be successfully maintained on the basis of conjectural and speculative evidence. *Robinson v. City of Dallas, supra* 514 F.2d at 1273. Since plaintiff failed to prove a "disparate effect" upon women due to the implementation of defendant's rule, the requisite threshold issue has not been met and there is no need for defendant to show any business necessity for the rule. *Coopersmith v. Roudebush*, 517 F.2d 818, 823 (D.C.Cir. 1975).

The District Court's judgment is affirmed.[6]

---

**6.** This result is supported by the Equal Employment Opportunity Commission which, under a similar plan, found that there was no reasonable cause to conclude that the employer was violating Title VII. *Case No. YBI 9C–012*, 1973 CCH EEOC Dec. ¶ 6103 (1970).