Mary ELKINS, Plaintiff,

v.

ST. LUKE'S HOSPITAL, Defendant.

No. 76–255C(4).

United States District Court,
E. D. Missouri, E. D.

Feb. 25, 1977.

Rita M. Montgomery, Whitfield, Montgomery & Walton, St. Louis, Mo., for plaintiff.

Kenneth C. Brostron, St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff brought this suit pursuant to 42 U.S.C. § 2000e *et seq.* and 28 U.S.C. § 1343 alleging discrimination on account of race.

This cause was tried to the Court sitting without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

### FINDINGS OF FACT

1) Plaintiff Mary Elkins is a black female citizen of the United States and at all times relevant herein resided in the City of St. Louis. Defendant St. Luke's Hospital is a not-for-profit corporation organized and existing under the laws of the state of Missouri and operating a hospital in the City of St. Louis, Missouri.

2) Plaintiff was initially employed by defendant as a loose sheet clerk (salary group Clerk Typist II) at $415.00 per month in the Medical Records Department on December 31, 1973. The duties of a loose sheet clerk generally consisted of filing medical records in patients' medical records files.

3) At the time plaintiff was employed by defendant, it was the policy and practice that the director of the Medical Records Department, Edna Stevens, review the related work experience and educational achievement of applicants in order to determine hiring, salary, and promotion within the Medical Records Department. The Director of the Medical Records Department was given a range of salaries in order to determine what salary each employee would earn. When an individual employee is hired, the Director reviews the job related work experience and educational achievement and determines the salary based upon the salary schedule published by defendant. After this initial salary assignment, employees receive incremental raises based upon their work experience plus any across-the-board raises which may be given from time to time to all personnel.

4) On January 6, 1974, plaintiff's salary was increased to $425.00 per month. On June 23, 1974, plaintiff's salary was increased to $456.50 per month.

5) Plaintiff had no medical records department experience and no technical skills relating to the Medical Records Department. She had completed three years of college and had worked for three months as a secretary in a laboratory and for three months as a filing clerk.

6) Sandra Aach, a white female who applied for employment on January 23, 1974, was hired as a Discharge Clerk (salary group Clerk II) at $475.00 per month. Ms. Aach had completed four years of college and possessed 28 months of job related experience as a medical records department clerk, and 17 months of general clerical experience. She knew coding, indexing and filing of a hospital's Medical Records Department.

7) In January, 1974, plaintiff requested to be transferred to the position of Discharge Clerk. The duties of a Discharge Clerk included clerical skills, the typing of index cards, the tabulation and transfer of

analysis information to a book which is a compilation of medical record information for statistical purposes, telephone answering, and the removal and replacement of medical records from their respective files. Plaintiff's request was granted.

8) In January, 1974, while a discharge clerk, plaintiff requested to be transferred to a Transcription Secretary. This position required the typing of medical reports from a recording device. Plaintiff took several tests to demonstrate her ability to transcribe these records. After the head of the Medical Records Department reviewed plaintiff's tests, the request to transfer was denied. The tests contained numerous errors in spelling and indicated that plaintiff was not familiar with medical terminology.

9) In March, 1974, plaintiff requested to be transferred to the position of Correspondence Secretary. This position involves the transcription of medical terminology as well as communicating and transmitting medical records to patients and their representatives. It is the history of this position that it be held by an accredited record technician. The position requires an understanding of medical and legal terminology as related to medical records, their transcription, and dissemination to the public; if this background was not possessed, defendant desired that the person employed in the position of Correspondence Secretary be enrolled in the American Medical Records Association ART correspondence course in order to learn the skills necessary to perform the job. Successful completion of this correspondence course requires one to two years. The training period for the job itself normally takes three months.

10) Plaintiff's request to transfer to the position of Correspondence Secretary was denied. Plaintiff had indicated on her employment application that she only intended to work for defendant for two years. In addition, plaintiff had demonstrated only three months earlier that she did not possess an understanding of medical terminology. Additionally, the Medical Records Department at the time of this request was experiencing a personnel turnover and

shortage. A transfer of plaintiff to the position of Correspondence Secretary, if plaintiff had possessed the qualifications, would have required the training of two people: plaintiff would have to be trained for the position of Correspondence Secretary and a replacement would have had to be trained for plaintiff's position as Discharge Clerk.

11) Plaintiff voluntarily quit her employment on August 28, 1974.

12) In 1973, two other full time Clerk Typists were hired in the Medical Records Department. One was a white female who, like plaintiff, had no prior medical records experience. This woman was employed at a salary of $405.00 per month, lower than plaintiff's starting salary. The second employee hired was a white male. He also had no prior medical records department experience and he too was started at a salary of $405.00 per month.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the subject matter and the parties to this suit. 42 U.S.C. § 2000e et seq.; 28 U.S.C. § 1343.

Plaintiff contends that she was the subject of racial discrimination in that defendant paid her a lower starting salary than was paid to Sandra Aach and defendant refused to promote plaintiff. The Court is of the opinion that there was no racial discrimination involved in any of the decisions defendant made respecting plaintiff's employment.

Apparently, plaintiff claims that the salary range which defendant applies to new employees is a neutral policy having a disparate impact upon blacks. See Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). It is the Court's opinion that plaintiff has failed to establish that this practice has a disparate impact upon blacks. See Green v. Missouri Pacific Railroad Company, 523 F.2d 1290 (8th Cir. 1975). The fact that one white employee was given a higher starting salary than plaintiff does not constitute discrimination. The white employee had substan-

tially more experience than plaintiff. Other white employees who had the same experience as plaintiff were started at lower salary than was plaintiff. *Cf., Andres v. Southwestern Pipe, Inc.*, 321 F.Supp. 895 (W.D.La.1971), *aff'd*, 446 F.2d 899 (5th Cir. 1971). Any statistical inferences that could be drawn from the evidence would be insufficient to establish a prima facie case. *Green, supra; Harper v. Trans World Airlines*, 525 F.2d 409, 412 (8th Cir. 1975).

■ Plaintiff apparently does not contest defendant's failure to promote her to the position of Transcription Secretary. It was clear from the evidence that plaintiff was not qualified for the job and therefore did not establish a prima facie case. *Griggs, supra.*

■ Plaintiff does contest defendant's failure to promote her to the position of Correspondence Secretary. Plaintiff argues that she was qualified for that position and that defendant's policy is to give preference to employees over outside applicants. Plaintiff argues that anytime there is a transfer or promotion, two persons must be trained and therefore that was not a sufficient reason for refusing the promotion. It is the Court's opinion that plaintiff was not qualified for this position and accordingly, did not prove her claim. *Griggs, supra.* Assuming arguendo that plaintiff was qualified for the position, the burden then shifts to defendant to establish that there was a legitimate, nondiscriminatory reason for the failure to promote. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court concludes that defendant has met that burden. Defendant weighed the time required for training plaintiff for the position against the fact that plaintiff intended to work for defendant for only two years. Additionally, defendant considered the fact that it was short of experienced personnel and a transfer would require training two people. Both of these reasons are nondiscriminatory and plaintiff has failed to establish that they were merely pretextual.

Accordingly, judgment will be entered for defendant.