Jesse Donald **ABSHIRE**, Jr., Plaintiff,

v.

**MARTIN PROCESSING, INC.,**
Defendant.

Civ. A. No. 81–0064(R).

United States District Court,
W. D. Virginia,
Roanoke Division.

March 15, 1982.

Hubert A. Ruff, Jr., Davis, Davis, Davis & Welch, Rocky Mount, Va., for plaintiff.

Frank Bullock, Jr., Greensboro, N. C., for Martin Processing.

## MEMORANDUM OPINION

DALTON, District Judge.

This is an action for discrimination in employment brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1). Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

On January 13, 1975 Jesse D. Abshire, Jr., plaintiff, was fired from his employment as a dye machine operator at defendant Martin Processing, Inc. Two days later he filed a charge with the Equal Employment Opportunity Commission, stating in the form affidavit that he and three women at the plant had seen a man taking company property from the maintenance shop and dye house, that they thought it their duty to report this, that he wrote a letter to the company conveying this information and delivered it to the local police, and that he had been fired for doing so while the three women involved were still at work. Abshire's charge languished in the EEOC until December 9, 1980, when the Commission notified him that it was terminating any further processing of his charge and issued to him a Notice of Right to Sue. Abshire then brought suit in this court on March 5, 1981, alleging disparate treatment because of sex and seeking $100,000 in damages. The case was tried to the court sitting without a jury on December 10, 1981. After careful review of all the testimony, exhibits, oral arguments, and briefs, the court hereby adopts the following as its findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

The pertinent facts are not seriously in dispute. Plaintiff began work with Martin Processing in December 1973 as a helper in the dye house. He was promoted after four months to dye machine operator. He was a good worker and was recommended at one time by his supervisor, Walter Hodges, for promotion to creel foreman.

In late December 1974 three women who worked in the same area of the plant approached plaintiff and told him that they suspected Walter Hodges, their mutual supervisor, of stealing company property. Plaintiff himself had seen Hodges' pick-up truck at the plant on several occasions, always on the midnight shift, loaded with yarn, tools, and other materials. Plaintiff

and the women did not believe Hodges was authorized to load his truck with company material. Although they did not know, and never determined for a fact, that Hodges was stealing from the company, they nevertheless agreed that they should inform the higher management of their suspicions. The women asked Abshire to write a letter to the company, believing that he could phrase it better than they. All four met at a restaurant in Rocky Mount and discussed what the letter should contain. Plaintiff then wrote the letter on Holiday Inn stationery, advising the company of Hodges' activities and accusing him of theft.[1] It was agreed that plaintiff was to have copies made of the letter and that the four would meet again to review it before sending it off.

Plaintiff took the letter to a friend, Lieutenant Burt Taylor, at the Franklin County Sheriff's Department. Plaintiff's testimony was that he asked Taylor to copy the letter confidentially and return it and the copies to him. The copies were then to have been sent to Mr. Hermes, President of Martin Processing, Inc., Bob Newman, plant manager, and Roger Tippett, plant superintendent.

Taylor never returned the letter to plaintiff. Instead, he forwarded it to B. G. Pickeral, Chief of Police of Rocky Mount,[2] who in turn brought it to the attention of Newman and Tippett. The company immediately began an investigation of the charge. Hodges traveled to Richmond at his own request and submitted to six lie detector tests. He passed each one. During this time, for approximately two weeks,

plaintiff made no effort to discover from Taylor what had happened to the letter.

Newman and Tippett had been told by Chief Pickeral that plaintiff had authored and delivered the letter to the police. On January 13, 1975 they called him into the office and advised him that they had received the letter, had conducted an investigation, and had cleared Hodges of the charge. Newman explained to plaintiff that his actions in making such a charge had embarrassed the company and the supervisor involved, had the potential for doing great harm to the supervisor's reputation and his family as well as for undermining the supervisor's effectiveness with the company. Plaintiff was given the choice of resigning "for personal reasons" or of being fired. Newman told him that if he were fired a letter explaining the circumstances would be placed in his file. Plaintiff chose to resign.

At the time he was discharged, plaintiff did not tell Newman or Tippett that other persons were involved in writing the letter. There is some evidence, however, that Hodges and Newman knew others were involved, but not that they were women. In any case, one of the women involved, Jeanette Brown, went to Tippett's house the following week and told him of her participation in the events. Another of the women, Judy Jones, had already done the same. Neither of these women was reprimanded or disciplined in any way.

## CONCLUSIONS OF LAW

Title VII of the Civil Rights Act of 1964 prohibits all discrimination in employment

---

1. The letter read as follows:

   Dear Sirs:

   We deeply regret writing this letter, but we feel it our responsibility. Please also understand that this letter is not written because of any grudge, nor it is a conspiracy to unjustly incriminate anyone.

   We have seen Walter Hodges on several occasions load his pickup truck with yarn, (also tools, sheet metal, and channel iron, from this shop) which belong to Martin Processing.

   Jake Washburn helped him load it but recieved [sic] none of the goods. Jake wanted to confess his wrong but was afraid of Hodges because of his authority.

   Jake valued the materials stolen from the shop alone are worth thousands of dollars.

   If you doubt us, please remember that we work here, this is our living. He is stealing from us as well as from the stockholders.

   We know you went to great time and trouble to find out who did this. We have done all we can do to help. Please take the time and trouble to find out the real guilty party.

   Sincerely yours,
   The employes [sic] of Martin Processing Rocky Mount.

2. Martin Processing, Inc. is located within the city of Rocky Mount, and therefore within the jurisdiction of the city police rather than of the sheriff of the surrounding county.

based upon race, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1).[3] Such discrimination may be of the "disparate treatment" type, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) or the "disparate impact" type, *see Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), or both, *see Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). The parties to this action agree that the case is to be analyzed under the "disparate treatment" test of *McDonnell Douglas.*

"Disparate treatment" . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. [Citation omitted]. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

*International Brotherhood of Teamster v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).[4]

The ultimate and critical determination to be made in a disparate treatment inquiry is whether the defendant intentionally discriminated against the plaintiff on the basis of one or more of the impermissible factors set forth in § 2000e–2(a)(1). To aid the litigants and the court in arriving at this ultimate question, the Supreme Court has established, in a line of decisions culminating in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67

L.Ed.2d 207 (1981), a series of intermediate evidentiary burdens.

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reasons for the employee's rejection." [Citation omitted]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* at 251, 101 S.Ct. at 1093.

■ The particular facts needed to establish a prima facie case will necessarily vary from case to case and will depend upon the specific allegations made and the type of discrimination sought to be redressed. *See McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

■ In an action alleging a discharge based on reverse sex discrimination, a prima facie case is established when plaintiff proves 1) that he is male, 2) that he was discharged, and 3) that similarly situated females were not discharged. When proof is offered to establish these facts, an inference of discrimination arises because it is presumed that these acts, if not sufficiently explained, "are more likely than not based on the consideration of impermissible facts." *Furnco Construction Co. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

Initially the court notes that it has grave doubts whether plaintiff has carried even the minimal burden of establishing a prima

---

**3.** Section 703(a)(1) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) provides in pertinent part:

It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

**4.** "Disparate impact," by contrast, involves "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Teamsters v. United*, 431 U.S. at 335 n.15, 97 S.Ct. at 1854 n.15. Proof of discriminatory motive is *not* required under a "disparate impact" theory. *Griggs v. Duke Power Co.*, 401 U.S. at 430–32, 91 S.Ct. at 853–54.

facie case. In his attempt to meet this burden, plaintiff has proved facts which negate the conclusion that he and the other three women were similarly situated. It was plaintiff who actually wrote the letter and it was he who delivered it to the police. Whatever his intention may have been in so doing, plaintiff was the one person out of the four involved who, by delivering the letter to Lieutenant Taylor, caused the charge of theft against Hodges to be brought to the attention of the company through the intermediary of the local authorities. This in itself indicates that plaintiff's involvement in this unhappy affair was of a different nature than the three women and undermines his contention that they were all similarly situated.

■ Nevertheless, the court is willing to grant that plaintiff was sufficiently similarly situated with the other women involved for purposes of establishing a prima facie case. The analysis must then proceed to a determination whether the defendant has rebutted the presumption of discrimination by producing evidence that the discharge was for a legitimate, nondiscriminatory reason. The defendant need not prove the existence of this reason by a preponderance of the evidence, nor need it persuade the court that it was actually motivated by the proffered reason. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1094; *see also Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1979). The employer need only produce by admissible evidence a clear and reasonably specific nondiscriminatory basis for the employment decision. *Burdine*, 450 U.S. at 252, 101 S.Ct. at 1094. If it does so, the factual inquiry proceeds to the last level, at which plaintiff, who has retained the burden of persuasion throughout, must demonstrate by a preponderance of the evidence that the proffered reason of the employer was a mere pretext for discrimination. At that point, plaintiff's burden "merges with the ultimate burden of persuading the court that [he] has been the victim of intentional discrimination." *Id.* at 253, 101 S.Ct. at 1095.

In this case, the nondiscriminatory reasons offered by the defendant are plaintiff's primary culpability in the affair and the legitimate business purpose of discouraging employees from lodging with the police unsubstantiated charges against their supervisors. These clear and specific reasons are sufficient to shift the inquiry to the third and final level, at which plaintiff bears the ultimate burden of proving by a preponderance of the evidence that defendant's explanation is pretextual and that he was motivated by discriminatory intent.

As is normal in actions such as this, plaintiff did not, and could not, offer direct evidence of discriminatory intent. Plaintiff urges, however, that the circumstances of this case support an inference of discriminatory intent sufficient to carry his burden of persuasion without direct evidence of such intent.

■ While it is true, as noted above, that in some circumstances discriminatory intent can be inferred from the mere fact of a difference in treatment, *Teamster v. United States*, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15, the facts before this court are clearly not persuasive enough to carry the burden plaintiff wishes them to bear. The inference plaintiff urges upon the court, that he was discharged as an "example" to the other women at the plant and would not have been discharged had he not been male, it too clearly overborne by the more persuasive inference that defendant believed plaintiff to be the "ringleader" in the incident and that he alone should bear the penalty for his indiscretion. Whether one views this decision as justified or as unfair, it was nonetheless an example of the type of traditional management prerogative that Title VII was not intended to impair. *See Steelworkers v. Weber*, 443 U.S. 193, 207, 99 S.Ct. 2721, 2729, 61 L.Ed.2d 480 (1979).[5]

## CONCLUSION

Plaintiff admits that his involvement in this unfortunate incident was the result of inexperience and youth and that he failed to use his best discretion. However laudable the end may be that plaintiff was seek-

---

5. The court is aware that, although an employer has an unquestioned right to discharge an

employee for "good reason, bad reason or no

ing to achieve, the company was understandably disturbed that he had conveyed to the local police a serious criminal charge on the basis of a mere suspicion, and that he had done so without advising the company first. The penalty paid for this indiscretion was high; but it was not a penalty that, absent impermissible discrimination, the equal employment opportunity provisions of Title VII were designed to redress.

Plaintiff has failed to demonstrate by a preponderance of the evidence that his employer was motivated by discriminatory intent in discharging him. Accordingly, judgment will be entered in favor of the defendant and this case will be stricken from the docket of the court.

reason absent discrimination," *Harper v. TWA*, 385 F.Supp. 1001, 1004 (E.D.Mo.1974), *aff'd*, 525 F.2d 409 (8th Cir. 1971), if the same misconduct exists among a number of employees, the penalty applied in the employer's discretion cannot be used as a pretext for discrimination, *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). *See also Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976); *Rogers v. McCall*, 488 F.Supp. 689, 695 (D.D.C.1980) In this case, however, plaintiff has failed to demonstrate that he waₔ similarly situated with the women (that the degree of employee misconduct was the same) and has failed to carry the ultimate burden of establishing discriminatory intent on the part of his employer.