Terry ROGILLIO, Plaintiff,

v.

**DIAMOND SHAMROCK CHEMICAL CO., Defendant.**

Civ. A. No. 75–H–995.

United States District Court,
S. D. Texas,
Houston Division.

Dec. 31, 1977.

Eliot P. Tucker, Mandell & Wright, Houston, Tex., for plaintiff.

Robert Ross Harrison, Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM

SEALS, District Judge.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. in which Plaintiff, Terry Ann Rogillio, alleges that she has been denied equal employment opportunity because of her sex. She seeks injunctive relief and damages in the form of back pay and attorneys fees. The Court, sitting without a jury, having heard the evidence and arguments of counsel, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. In 1971 Plaintiff, Terry Ann Rogillio (Ms. Rogillio), a female, applied for the job of summer lifeguard at the company pool of Defendant, Diamond Shamrock Chemical Company (Diamond Shamrock), in Deer Park, Texas. Her application was not considered at that time either because she was too young or because the position had already been filled.

2. On or about April 6, 1972 Ms. Rogillio went to the office of Diamond Shamrock and again applied for the position of lifeguard at Defendant's pool. She was one of thirty-two applicants that year, eight females and twenty-four males. After completing the application, she was called back at a later date and interviewed by Mr. Arturo Ibarra, who at that time was Defendant's Employment Manpower Coordinator at its Deer Park facility.

3. In late May, 1972 Mr. Ibarra notified Plaintiff that Diamond Shamrock had hired someone else to be the lifeguard that summer.

4. Ms. Rogillio contends that Diamond Shamrock hired a male who was less qualified than she. On May 25, 1972, she filed a complaint with the Equal Employment Opportunity Commission (EEOC) and, after receiving her "right-to-sue" letter from the EEOC, Ms. Rogillio timely filed this suit.

*Job Requirements*

5. Diamond Shamrock maintains a club house and swimming pool facility on its grounds for the use of its approximately 800 employees, their families and guests. During the summer, when the swimming pool is open, Diamond Shamrock provides a lifeguard for the facility and has been doing so for the last twenty-five years.

6. Besides the normal life-saving duties of a swimming pool lifeguard, which include supervising the pool area, overseeing and rescuing swimmers in trouble, opening and closing the pool, keeping the pool and the pool area clean, and teaching some swimming lessons, the Diamond Shamrock lifeguard is in overall charge of maintaining order in and around the pool and in the clubhouse and park area. The lifeguard is also responsible for opening and closing the park facility and for carrying the cash box to and from the clubhouse and the First Aid Station.

7. The park facility is located approximately one-quarter mile from the company's administrative offices and the guard house is isolated near the entrance to Diamond Shamrock's property. The location of the clubhouse has been a cause of concern to Diamond Shamrock that its lifeguard be able to handle the disciplinary problems that arise since the closest company personnel who would be available to assist the lifeguard would be a quarter mile away.

8. Mr. Warren Riggs, Diamond Shamrock's Employee Relations Manager, testified that over the years there have been many instances of rowdiness and destruction of furniture in the clubhouse, horseplay in the pool and pool area, fighting and several instances where persons have been injured both in the pool and park areas.

9. Because of the location of the pool and the bouncer-like duties the lifeguard is required to perform at Diamond Shamrock's facility, the company considers the subjective criterion, "ability to command respect and maintain discipline," as a very important, if not the most important, quality that the lifeguard must possess and the

Court finds that "ability to command respect and maintain discipline" is an important job-related qualification.

10. The lifeguard must also be at least eighteen years old, must be a certified Water Safety Instructor (WSI), must be in good physical condition, willing to work evenings and weekends, must be available from Memorial Day weekend through Labor Day, and must be willing to work the prescribed hours at the prescribed wages.

### Hiring Procedures

11. Mr. Riggs testified that the procedure followed to select the lifeguard each year is to take applications from all interested persons, screen the application forms and interview the people who meet the stated qualifications, and then choose the applicant who, in Diamond Shamrock's opinion, is the most qualified to perform the full duties of the job.

12. In the summer, 1972 two males, Mr. Arturo Ibarra and Mr. Jim Vokoun, were primarily responsible for interviewing applicants and making the final hiring decision. Mr. Riggs testified, however, that in previous years females had served as interviewers for the lifeguard position.

13. Diamond Shamrock does not have a written job description nor a written set of qualifications for the position of lifeguard. An applicant who possesses the WSI certificate is considered to be qualified to handle the lifesaving and teaching duties. There is no test given to determine which applicant best possesses the "ability to command respect and maintain discipline" but the Court is not aware of any objective test which would adequately measure this characteristic. Neither of the interviewers testified at trial[1] as to his concept of "ability to command respect." Mr. Riggs testified, however, that Diamond Shamrock considers a female capable of handling the lifesaving duties of a lifeguard and possessing the personal ability to command respect and maintain discipline.

14. Although the relative size of the applicant is a factor which Diamond Shamrock considers in determining whether an individual possesses the ability to command respect and maintain discipline, there is no evidence that the company based its hiring decisions solely on this factor. If this were true there would be no need to call in prospective candidates for interviews. Size could easily be determined from a glance at the applicant when he or she turns in the application form. In the summer, 1972, however, Diamond Shamrock interviewed several male and female applicants before making its decision to hire Douglas Fink.

Further, except for the year 1972 when Plaintiff was passed over for a larger male, there is no evidence regarding the relative size of the applicants nor the size of any person hired. There is therefore no evidence to support a finding that in each year Defendant hired the largest applicant.

### Statistics

15. Diamond Shamrock's pool facility has been in operation for about twenty-five years, but they had never hired a female in the position of lifeguard until 1976, after this lawsuit was filed. However, the company did not receive an application from a female until at least 1968 or 1969.

16. Defendant's records concerning applicants for the job go back only as far as 1972. From 1972 to 1976, a total of forty-one males and thirteen females were considered for the job. Five males and one female have been hired. During the period 1968–72, due to the absence of company records, there is no evidence as to the relative number of males and females who applied for the position or their qualifications.

### Plaintiff's Qualifications

17. On the basis of her application, Diamond Shamrock considered Ms. Rogillio a potential candidate for the job and called her back for an interview. Mr. Riggs testified at trial that they considered Ms. Rogillio to be a qualified applicant. She had a

---

[1]. At the time of trial Mr. Ibarra was no longer employed by Defendant and Mr. Vokoun was employed by Diamond Shamrock but at its facility in Cleveland, Ohio.

current WSI certificate, had taught swimming lessons and had done some substitute volunteer lifeguarding at Girl Scout Camp one summer, but had no paid experience. She was eighteen years old, 5′ 4″ tall and weighed approximately 120 pounds.

18. The male who was hired for the job was Douglas Joseph Fink. He also had his WSI certificate, but had never taught swimming lessons, and did not have any paid lifeguarding experience. He was nineteen years old, 6′ tall and weighed approximately 220 pounds.

19. Besides Plaintiff and Mr. Fink, thirty other people (seven females and twenty-three males) applied for the job that summer. Although the company kept only eight of the males' employment applications and all of the females', the applications which were retained indicate that at least nine of the applicants, five male and four female, possessed the necessary training to meet the company's requirements. In addition, three of the male applicants had three to nine months paid lifeguarding experience, some with teaching experience, and three of the females had from one to four months paid lifeguarding experience.

20. The Court finds that based on a review of all the qualified applicants, Diamond Shamrock decided to hire Douglas Fink because in its opinion he was the most qualified applicant. It based its decision not only on his objective qualifications, but also on his apparent ability to command respect and handle any disciplinary matter that might arise at the park facility.

21. Although Plaintiff urges the Court to find that she actually possessed more "ability to command respect" than did Mr. Fink based on their respective appearances before this Court, the Court cannot make such a finding. To do so would be to substitute its subjective opinion for the subjective opinion of the company employees more than four years after the fact.

22. There is no evidence that the company's requirement of "ability to command respect and maintain discipline" was intended to discriminate against females or that, regardless of intent, its use resulted in a discriminatory impact on females.

23. There is no evidence of a company-wide policy or practice of discrimination against females at Diamond Shamrock. Mr. Riggs testified that the company has employed and does employ females in each of the separate job categories identified by the EEOC. Further, the company has never received an EEOC complaint alleging sex discrimination except for that filed by Plaintiff.

24. The Court finds that Defendant's decision on two occasions to transfer to the lifeguard job two males who were employed elsewhere in the plant, rather than to contact any of the other applicants, was reasonable in view of the fact that it was only a short-term job and it was much more administratively advantageous for the company to transfer rather than to hire a new employee for such a short period.

25. The Court finds that sex was not a factor in Plaintiff's not being hired as a lifeguard in May, 1972.

## CONCLUSIONS OF LAW

1. During the relevant time, Diamond Shamrock was an "employer" as that term is defined in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

2. The Court has jurisdiction of the subject matter and of the parties.

### Order and Burden of Proof

3. The order and burden of proof in an individual discrimination case under Title VII was set out by the Supreme Court in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must carry the initial burden of establishing a prima facie case of sex discrimination. Once plaintiff has met this burden, it then shifts to the employer to convince the court by a preponderance of the evidence that it had a legitimate, non-discriminatory reason for rejecting the plaintiff for employment. *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1255 (5th Cir. 1977). The ultimate burden of proving

discrimination then rests with the plaintiff who must prove by a preponderance of the evidence that defendant's stated reason for rejecting her was a pretext for a sexually discriminatory decision. *McDonnell Douglas, supra.*

### Prima Facie Case

4. Since facts vary from case to case, the proof needed to establish a prima facie case will also necessarily vary depending upon the particular fact situation. *McDonnell Douglas, supra,* 411 U.S. n. 13 at 802, 93 S.Ct. 1817.

The thrust of Plaintiff's argument in this case is that Diamond Shamrock's hiring procedures for the position of lifeguard are subjective and their use has resulted in discrimination against female applicants in general and against her in particular. She contends that she has established a prima facie case by showing 1) that Defendant never hired a female lifeguard prior to the filing of this law suit (*i. e.,* that the hiring procedure had a disparate impact on women applicants); and 2) that the male the Defendant hired in the summer of 1972 was less qualified than she (*i. e.,* that Diamond Shamrock discriminated against her).

### 1. No Evidence of Disparate Impact on Female Applicants

■ 5. The Court has carefully considered Plaintiff's contention that Diamond Shamrock's lack of objective hiring procedures and objective job criteria has resulted in discrimination against women applicants for the position of lifeguard, but concludes that the evidence does not support such a finding.

■ The Court recognizes that subjective hiring procedures are inherently suspect, *Rowe v. General Motors,* 457 F.2d 348 (5th Cir. 1972), but also recognizes they are not violative of Title VII *per se.* As the Court of Appeals stated in *Hester v. Southern Railway Company,* 497 F.2d 1374, 1381 (5th Cir. 1974), "Title VII comes into play only when such practices result in discrimination." Thus, subjective criteria and hiring procedures are evidence of discrimina-

tion only when there is also evidence that their use results in a disparate effect on a protected group. *Harper v. Trans World Airlines, Inc.,* 525 F.2d 409 (8th Cir. 1975); *Rogers v. International Paper Co.,* 510 F.2d 1340, 1345 (8th Cir.), vacated and remanded on other grounds, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975); *Gilmore v. Kansas City Terminal Railway Co.,* 509 F.2d 48, 52 (8th Cir. 1975); *Coopersmith v. Roudebush,* 170 U.S.App.D.C. 374, 517 F.2d 818 (1975); *Meith v. Dothard,* 418 F.Supp. 1169 (M.D. Ala.1976). In this case there is no such evidence.

A plaintiff can establish a discriminatory effect on a protected group through the use of statistics alone. *Robinson v. City of Dallas,* 514 F.2d 1271 (5th Cir. 1975); *Brown v. Gaston County Dyeing Machine Co.,* 457 F.2d 1377 (4th Cir. 1972); *Rowe v. General Motors, supra.* However, in this case the statistical universe is too small to be significant. Diamond Shamrock had not received an application for the position of lifeguard from a female prior to 1968. From that time until the time of trial there have been only ten persons, including the two replacements, hired as lifeguard by Diamond Shamrock. Courts have uniformly held that evidence of this type has little, if any predictive value. *Harper v. Trans World Airlines, supra; Ochoa v. Monsanto Company,* 473 F.2d 318 (5th Cir. 1973); *Robinson v. City of Dallas, supra; Morita v. S. California Permanente Medical Group,* 541 F.2d 217 (9th Cir. 1976) ("Plaintiff's use of only eight persons in his statistical analysis is much too small to have any significant benefit to his position . . ."); *Keely v. Westinghouse Electric Corp.,* 404 F.Supp. 573 (E.D.Mo.1975).

Plaintiff, however, contends that this case is distinguishable since Diamond Shamrock never hired a female lifeguard until after this suit was filed. She relies on *Rodriguez v. East Texas Motor Freight, Inc.,* 505 F.2d 40, 53 (5th Cir. 1974), rev'd on other grounds, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Jones v. Lee Way Motor Freight, Inc.,* 431 F.2d 245 (10th Cir. 1970) and *Bing v. Roadway Express, Inc.,*

444 F.2d 687 (5th Cir. 1971) to support her position. These cases are distinguishable on their facts. In each case the organizations involved had large employee or membership contingencies and the evidence demonstrated clear statistical imbalances. *Rodriguez,* for example, involved a work force of approximately 180 drivers over several years and defendant company had never hired a Black or a Mexican-American into any of those 180 road driver positions. The Court held that the statistics were so "overpowering" that a prima facie case had been proved by statistical evidence alone. Similarly, in *Bing* the defendant had hired 293 drivers from the time it commenced business until December, 1965, none of whom were Black. The large number of jobs, people and hiring decisions involved in those cases clearly indicated a statistical disparity. Here we have a case of a failure to hire a member of a specific protected class into a specific job over a relatively short period of time.

■ On the basis of the evidence the Court concludes that the fact that Diamond Shamrock did not hire a female lifeguard until 1976 does not establish a prima facie case of discrimination.

■ 6. The Court similarly finds no merit in Plaintiff's allegation that discrimination against female applicants is an inevitable result of Defendant's use of the subjective qualification, "ability to command respect and maintain discipline." She argues that since Defendant places so much emphasis on this particular quality, inevitably the largest applicant each year will be selected, and since men are usually larger than women, a man will always be hired. There is no evidence in the record that the use of this criterion will always result in the largest applicant being hired. Accordingly, the Court concludes that the use of this subjective criterion has not resulted in a disparate impact on women applicants.

### 2. Disparate Treatment: Prima Facie Case

7. Plaintiff has failed to prove that Diamond Shamrock's use of subjective hiring practices has resulted in a disparate impact on female applicants in general, but she nevertheless claims that she has established a prima facie case of discrimination against her by showing that she is a person protected by the statute, that she applied for a position which was open and for which she was qualified, and that rather than hiring her, Defendant hired a less qualified male. *McDonnell Douglas, supra.* It is undisputed that Plaintiff is a person protected by the statute and that she applied for a position which was open and for which she was qualified (See Finding 17). The question of whether Diamond Shamrock hired a less qualified male, however, is more perplexing.

■ Although Plaintiff concurs that the qualification, "ability to command respect and maintain discipline" is job related, she argues in effect that since there is no objective way to measure this qualification the only way to determine which applicant is more qualified is to compare their measurable qualifications. Therefore, although the Court cannot conclude that on the basis of all of the enumerated criteria Plaintiff was more or less qualified than Douglas Fink to be the lifeguard that summer, on the basis of the objective qualifications only, the Court concludes that Plaintiff was the more qualified of the two applicants (See Findings 17 and 18) and therefore that she has established a prima facie case of discrimination.

### Legitimate, Non-Discriminatory Reason for Rejecting Plaintiff

■ 8. Although Plaintiff has established a prima facie case of disparate treatment, Diamond Shamrock has met its burden of proving by a preponderance of the evidence a legitimate, nondiscriminatory reason for rejecting Ms. Rogillio in favor of the male applicant, Douglas Fink. *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. 1817; *Turner, supra,* at 1255.

Diamond Shamrock maintains that on the basis of all of the qualifications considered it hired the most qualified applicant. That

is, out of the thirty-two applicants in 1972 it hired the one who not only met the stated minimum requirements, but who also, in its subjective opinion, best possessed the "ability to command respect and maintain discipline." Because of the special circumstances of Diamond Shamrock's employee park facility and the particular nature of the duties of the lifeguard at the facility the Court concludes that this is a facially neutral and job-related criterion.

 The determination of which applicant best possesses this criterion is a subjective decision but courts recognize that hiring decisions often cannot realistically be made on the basis of objective standards alone, *Rogers v. International Paper, supra,* at 1345, and that a subjective reason for failure to hire a person should be given consideration in rebutting charges of discrimination. *McDonnell Douglas, supra,* 411 U.S. at 803, 93 S.Ct. 1817; Cf. *Martin v. Chrysler Corporation,* 10 FEP 329 (E.D. Mich.1974).

The Court is convinced by a preponderance of the evidence that sex had nothing to do with Defendant's decision not to hire Ms. Rogillio. This is not a case involving stereotyped presumptions as to the ability or inability of females to handle a particular job or the refusal to consider a woman for the job. Rather, it is a case where Plaintiff was considered on the basis of her own individual characteristics and was determined not to be the most qualified for the particular duties of the job.

### No Showing of Pretext

9. Plaintiff has the ultimate burden of proving discrimination by demonstrating by a preponderance of the evidence that Defendant's facially neutral reason for rejecting Plaintiff was in fact a mere pretext for discrimination. Plaintiff can do this by showing evidence of a pattern or practice of discrimination at Diamond Shamrock's facility, or by showing that the facially neutral job qualification is discriminatory in application, or in any other way which would tend to show pretext. *McDonnell Douglas, supra,* 411 U.S. at 804–805, 93

S.Ct. 1817. The Court has already found that there is no evidence of a pattern or practice of discrimination against females at Diamond Shamrock (See Finding 24) and has also concluded that there is no evidence that the subjective hiring criteria are discriminatory in their application. Plaintiff has offered no other evidence which would prove to the Court that Defendant's stated reason for rejecting Ms. Rogillio is in reality a coverup for discrimination.

Accordingly, the Court concludes that Plaintiff has failed to establish that she was discriminated against because of her sex and has thereby failed to establish any basis for recovery of monetary or equitable relief.

In the event that any of the foregoing Findings of Fact also constitute Conclusions of Law, they are adopted as such. In the event that any of the foregoing Conclusions of Law also constitute Findings of Fact, they are also adopted as such.