**Robert A. LAW, Plaintiff,**

v.

**GREYHOUND LINES, INC., Defendant.**

**Civ. A. No. 178–210.**

United States District Court,
S. D. Georgia,
Augusta Division.

April 1, 1980.

---

John H. Ruffin, Augusta, Ga., for plaintiff.

John L. Creson, Hull, Towill, Norman, Barrett & Johnson, Augusta, Ga., for defendant.

MEMORANDUM OPINION AND ORDER

BOWEN, District Judge.

In this action plaintiff, Robert Augustus Law, alleges he was denied employment by defendant, Greyhound Lines, Inc. [Greyhound], because of his race in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e—2000e–17 (1976) and 42 U.S.C. § 1981 (1976). The non-jury trial was conducted on March 13–14, 1980. To facilitate a more structured presentation of the evidence, the Court, with consent of counsel, bifurcated the issues of liability and damages. Upon consideration of all the evidence and arguments of counsel presented at trial, as well as the pleadings and respective memorandum of both parties, the Court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

In 1974 and 1976, plaintiff, Robert Augustus Law, a black man, applied for employment as porter at the Augusta, Georgia, facility of defendant Greyhound Lines, Inc. The applications, dated June 18, 1974 and March 13, 1976 respectively, were filled out by Mr. Law's wife according to information he gave her. The June 18, 1974 application, in contrast to the application of March 13, 1976, was incomplete in several respects—most notably no applicant signature.

The position of porter, also known as platform worker, has been subsequently upgraded to baggage clerk. The job requirements of platform worker include the physical ability to handle baggage and perform janitorial service at the bus terminal, the capacity to read and write and route packages, and a demeanor conducive to courteous and responsible interaction with customers and their complaints.

On or about April 8, 1976, Mr. Law received a brief interview for employment when he met with James L. Gifford, the Augusta terminal manager. Mr. Law went to the terminal to determine the status of his employment application. The terminal manager was familiar with Mr. Law; he had seen plaintiff loitering around the terminal on prior occasions. Moreover, Mr. Gifford knew Mr. Law was a "Safety" taxicab driver. On one occasion, plaintiff's taxicab had blocked the terminal driveway with his cab, requiring Gifford to ask that it be moved.

The Safety Cab Company operates cabs in the Augusta, Georgia, area. Mr. Law owns a taxicab which he drives for this company. A competitor of Safety Cab, Radio Cab Company, has a contract with the Greyhound Lines Augusta terminal to provide taxicab service to Greyhound's customers. Testimony at trial revealed that Greyhound's contractual obligations with Radio Cab Company engendered an ongoing friction between "Safety" taxicab drivers and bus terminal management. Mr. Law applied for employment with Greyhound at the suggestion of two associates at Safety Cab Company who were employed at the Greyhound Augusta terminal.

At the time plaintiff arrived at the bus terminal, Mr. Gifford was in his office talking with a customer. Mr. Law interrupted and asked to know the status of his employment application. Thereafter, a limited discussion ensued between plaintiff and the terminal manager. During the course of this conversation, Mr. Law's conduct was forceful and rude. Mr. Gifford became agitated also. At the discussion's conclusion, Mr. Gifford informed plaintiff he was not hired because he was discourteous, and the terminal manager was apprehensive that Mr. Law would be rude to Greyhound's customers. Mr. Gifford also made certain entries to this effect in the "interviewer's comment" section of the employment application.

After plaintiff was not hired, a position similar to the one he sought remained open. It was subsequently filled by a Caucasian applicant whose skills were approximately the same as Mr. Law's, except that he exhibited no offensive conduct or tendencies. The terminal manager knew the Caucasian applicant prior to his employment with Greyhound. The application was submitted at the suggestion of the applicant's previous boss with whom Mr. Gifford had discussed the availability of employment. On a prior occasion, the terminal manager had a drink with the applicant at a local bar. Ironically, the Caucasian employee was subsequently terminated after an altercation with a customer who had used offensive language toward him.

**1346**

Robert Augustus Law is a high school graduate. He is physically capable of fulfilling the duties of platform worker. He possesses rudimentary literacy skills and speaks and understands the English language adequately.

Mr. Gifford's decision not to employ Mr. Law at the Greyhound Lines, Inc. Augusta, Georgia, facility was not because of plaintiff's race. Mr. Law was refused employment because of his conduct at the bus terminal prior to and during the brief encounter which the terminal manager referred to as plaintiff's employment interview. Specifically, Mr. Law (1) had loitered around the bus terminal; (2) evinced a discourteous and obtrusive manner during his conversation with Mr. Gifford; and (3) had once blocked the bus terminal driveway with his taxicab to the annoyance of the terminal manager.

In the Augusta, Georgia, area, statistical evidence reveals that Greyhound Lines, Inc. has demonstrated nondiscriminatory employment patterns and practices. For the job group "baggage clerk", an availability and utilization analysis showed no underutilization. As of June 30, 1978, the differential between the percentage of minorities employed as baggage clerks and overall minority availability was plus 33.12 percent. A breakdown of employees at the time of plaintiff's application shows five Black and eight White employees, or approximately 38 percent minority employment.

## CONCLUSIONS OF LAW

Defendant Greyhound is an "employer" within the purview of Title VII as defined by 42 U.S.C. § 2000e(b) (1976). Plaintiff satisfied the jurisdictional prerequisites to this federal action by timely filing charges of employment discrimination with the Equal Employment Opportunity Commission[1] and receiving a statutory notice of right to sue. Subject matter jurisdiction is proper pursuant to 42 U.S.C. § 2000e–5(f)(3) (1976).

■ Plaintiff's complaint is a non-class action alleging disparate and discriminatory treatment in employment. As delineated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the order and burden of proof in such actions places the initial burden on plaintiff to establish a prima facie case of racial discrimination. If plaintiff meets this burden, then the burden shifts to defendant to articulate some legitimate nondiscriminatory reason for plaintiff's rejection. *Id.* at 802, 93 S.Ct. at 1824. Upon satisfaction of this burden, the ultimate burden then rests with plaintiff to prove that defendant's stated reasons for rejection were pretextual. *Id.* at 804, 93 S.Ct. at 1825.

■ Plaintiff may establish a prima facie case of racial discrimination in employment by showing:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.

*Id.* at 802, 93 S.Ct. at 1824. Applying these guidelines to the instant case reveals: (1) plaintiff is member of a racial minority; (2) ostensibly plaintiff possessed the requisite qualifications for employment as platform worker; (3) plaintiff was rejected employment; (4) the position of platform worker remained open and Greyhound continued to seek applicants with qualifications similar to plaintiff. Thus, plaintiff carried his initial burden.

■ Satisfaction of this prima facie showing is not to be equated with an ulti-

[1] The charge of employment discrimination was investigated for the Equal Employment Opportunity Commission by the Augusta Human Relations Commission, a state referral agency. The investigatory file in this action was not managed in a manner best suited for the eventual litigation of the claim. Defendant was unable to obtain any portion of the file during the discovery process. The investigator did not testify at the trial. Only some conclusory testimony from the local agency director was available.

mate finding of discrimination, but rather raises an inference of discrimination. *Furnco Construction Co. v. Waters,* 438 U.S. 567, 576–77, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). To dispel this inference, Greyhound need only "articulate some legitimate, nondiscriminatory reason for the employee's rejection." 411 U.S. at 802, 93 S.Ct. at 1824. The word "articulate" has special import. As stated by the Supreme Court in *Board of Trustees v. Sweeney,* 439 U.S. 24, 25, 99 S.Ct. 295, 297, 58 L.Ed.2d 216 (1978): [T]here is a significant distinction "between merely 'articulat[ing] some legitimate, nondiscriminatory reason' and 'prov[ing] absence of discriminatory motive.'" The former may be satisfied if the employer simply explains what he has done or submits evidence of legitimate nondiscriminatory reasons. *Id.* at 25 n.2, 99 S.Ct. at 297 n.2.

■ Greyhound met its burden of articulation. Defendant explained and produced evidence to the effect that plaintiff was not hired because of his conduct and general demeanor. Platform workers deal with the traveling public on a daily basis requiring an affable disposition especially when confronted with customer grievances. Plaintiff, during his encounters with the bus terminal manager, demonstrated a contrary character and disposition.

Although the operative criteria in the decision not to employ plaintiff may be subjective, this does not necessarily render Greyhound's "articulation" less effective. "[C]ourts recognize that hiring decisions often cannot realistically be made on the basis of objective standards alone, . . . and that a subjective reason for failure to hire a person should be given consideration in rebutting charges of discrimination." *Rogillio v. Diamond Shamrock Chemical Co.,* 446 F.Supp. 423, 430 (S.D.Tex.1977) (citation omitted). Bearing upon the lack of discriminatory motive in applying such criteria, defendant's statistical evidence shows a racially balanced work force. In *Furnco, supra,* the Supreme Court recognized: "Proof

that [the employer's] work force was racially balanced or that it contained a disproportionately high percentage of minority employees is not wholly irrelevant on the issue of intent . . . ." 438 U.S. at 580, 98 S.Ct. at 2951.

■ The ultimate burden of proving discrimination rests with plaintiff. To prevail, plaintiff must show by a preponderance of the evidence that defendant's articulated reasons are pretextual. Plaintiff has not carried this burden. The evidence adduced at trial did not prove, in the terminology of *McDonnell Douglas,* "that the presumptively valid reasons for [plaintiff's] rejection were in fact a coverup for a racially discriminatory decision." 411 U.S. at 805, 93 S.Ct. at 1826.

■ This conclusion also decides plaintiff's section 1981 claim.[2] A successful action under 42 U.S.C. § 1981 requires a showing of purposeful discrimination. *See Williams v. DeKalb County,* 582 F.2d 2 (5th Cir. 1978). The foregoing analysis of the Title VII claim reveals that plaintiff has failed to prove discriminatory intent.

■ In its prayer for relief, defendant requests attorney's fees. Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k) (1976), permits the award of attorney's fees to a prevailing party in the discretion of the Court. Commenting upon the appropriate standard governing an award of attorney's fees to a defendant under section 706(k), the Supreme Court stated: "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Plaintiff's complaint may not be characterized in such manner. This conclusion forecloses an award of attorney's fees to defendant.

2. A subsidiary issue is the timeliness of the section 1981 claim. Defendant raised the statute of limitation as a bar to this claim at the conclusion of the trial. Fed.R.Civ.P. 8(c) requires that affirmative defenses such as statute of limitations shall be set forth in responsive pleadings. Defendant has not properly raised the statute of limitation bar.