Willie L. ROBINSON, etc.,
Plaintiff-Appellant,

v.

CITY OF DALLAS et al.,
Defendants-Appellees.

No. 74–2088.

United States Court of Appeals,
Fifth Circuit.

June 23, 1975.

James A. Johnston, Edward B. Clout-man, III, Dallas, Tex., for plaintiff-appellant.

Lois C. Bacon, Dallas, Tex., for defendants-appellees.

Before BROWN, Chief Judge, and GODBOLD and CLARK, Circuit Judges.

GODBOLD, Circuit Judge:

Plaintiff-appellant [1] contends that he was disciplined and discharged by the

---

1. Robinson sought, in addition to certain individual relief, injunctive relief on his own behalf and on behalf of all others similarly situated. The District Court held that Robinson was not a proper representative of his alleged class. There is no appeal from this ruling. Therefore Robinson prosecutes this appeal individually.

defendant employer, the city of Dallas,[2] pursuant to an employment rule which violates Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. The District Court found that plaintiff had failed to prove that the rule had a discriminatory effect on minority employees. We agree and affirm the judgment for defendants.

In January 1970 plaintiff Robinson, a Negro male, began employment with the Crossroads Community Center, a department of the city of Dallas.[3] On January 17, 1973, he was suspended without pay for five days under a city personnel rule which authorizes disciplining employees who fail to pay "just debts."[4] The amount of the "just debt" involved is unclear.[5]

█ Two months after his suspension, Robinson notified the Crossroads Community Center of his resignation, which he contends was in effect a constructive discharge. Defendants urge that plaintiff terminated his employment voluntar-

ily.[6] The District Court made no explicit finding on the issue of constructive discharge, deciding that the discipline imposed on plaintiff was a sufficient employment practice to fall within Title VII.[7] The District Court was correct in so finding. See Rowe v. General Motors Corp., 457 F.2d 348, 354 (CA5, 1972). We therefore hold that plaintiff has standing to raise this Title VII claim.[8]

 The heart of plaintiff's case is his theory that Rule 7.18 discriminates against blacks in violation of Title VII.[9] "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973). To do so, plaintiff need not demonstrate discriminatory intent by the employer, *Rowe*, 457 F.2d at 355, but need only show a practice discriminatory in effect, including "practices that are fair in form, but discriminatory in operation." Griggs v. Duke Power Co., 401

2. Other defendants include the Dallas City Manager, the Crossroads Community Center, and the Director of the Crossroads Community Center.

3. Defendants concede that the city of Dallas is an employer within the scope of Title VII. 42 U.S.C. § 2000e(b).

4. The rule provides:

 7.18 Employees may be disciplined for dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment to the public, *failure to pay just debts*, violation of Civil Service Rules, failure to report a vehicle accident, fraudulent use of sick leave, conviction of a criminal charge, any other failure of good behavior, or an accumulation of minor infractions. [emphasis added.]
 This rule is supplemented by a penalty guide:
 7. Neglect of Duty:

 d. Failure to pay just debts. First Offense: Reprimand to suspension for five days; Second Offense: Suspension for one pay period to removal; Third Offense: Removal.

5. Robinson stated that the creditor, Montgomery Ward, sought approximately $1000 from him but that the amount actually due was approximately $300.

6. Robinson points to the letter he received in January notifying him of the five-day suspension which stated in part: ". . . any further embarassment to the City of this nature will result in your termination by permanent suspension." He contends that discharge was inevitable, since he had resolved not to pay the debt in question. Defendants counter with facts that indicate Robinson intended to leave his employment for other reasons and that his intention had developed prior to the application of the "just debts" rule to him.

7. 42 U.S.C. § 2000e–2 provides:
 (a) It shall be an unlawful employment practice for an employer—
 (1) . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

8. If plaintiff had a meritorious Title VII claim it would be necessary to determine whether a constructive discharge took place in order to determine what relief was due him. Since we hold that he has not proved that Personnel Rule 7.18 violates Title VII, it is unnecessary to determine precisely how plaintiff was adversely affected by the rule.

9. Plaintiff exhausted his EEOC administrative remedies and received his notice of right to sue from the EEOC.

U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 (1971). Statistics alone may demonstrate a discriminatory effect sufficient to establish the required prima facie case. United States v. Hayes International Corp., 456 F.2d 112, 120 (CA5, 1972).

In an attempt to demonstrate the discriminatory effect and establish his prima facie case, plaintiff points to statistics cataloging the race of those disciplined under the "just debts" rule in recent years. These statistics indicate that seven employees, three of whom were black, were disciplined under the "just debts" rule in the period 1965–1973. Looking to years subsequent to 1968 (when, plaintiff argues, blacks first were hired by the city in significant numbers), three of the five employees disciplined under the "just debts" rule have been black. We are unable to conclude, on the basis of these few instances of discipline, that the "just debts" rule has a harsher effect on blacks than whites. Such small numbers are insufficient to support any conclusion as to whether the rule has a discriminatory effect. See Note, Employment Discrimination: Statistics and Preferences Under Title VII, 59 Va.L.Rev. 463, 478 (1973).

Alternatively, plaintiff employs the following analysis. First, he states that people who do not pay their just debts tend to be poor people. Plaintiff offers no support for his assertion but simply contends that the court is required to reach this conclusion. Such a conclusion certainly is not required, nor is the subject matter one for judicial notice. Indeed, we are not even certain that it is correct. Second, plaintiff states that Negroes comprise a disproportionately large portion of the poor people in Dallas. This assertion was supported by evidence.[10] Therefore, plaintiff concludes, disciplining and discharging people who do not pay their just debts results in a disproportionately large number of Negroes being disciplined and discharged. But, pretermitting the failure of proof of plaintiff's first premise, putting his two premises together does not compel his conclusion. It may be that although Negroes comprise a disproportionately large percentage of the poor, they do not comprise a disproportionately large percentage of the poor who do not pay their just debts.

Plaintiff also attempts to support his conclusion by reliance on several recent Title VII decisions, Johnson v. Pike Corp. of America, 332 F.Supp. 490 (C.D. Cal.,1971) (Los Angeles case, discharging employees due to multiple garnishments); Wallace v. Debron Corp., 494 F.2d 674 (CA8, 1974) (Missouri case, discharging employees due to multiple garnishments); Gregory v. Litton Systems, Inc., 316 F.Supp. 401 (C.D.Cal., 1970), aff'd 472 F.2d 631 (CA9, 1972) (Los Angeles case, refusing to hire persons with more than a certain number of non-traffic arrests). In each of these cases the racially discriminatory effect of the practice in question was either proved by adequate evidence or was stipulated. In the instant case there is neither stipulation nor evidence but only conjecture, and the evidence in the above cited cases is not a substitute for that required in this case.

Finally the statistics offered by plaintiff indicate that he misconstrues the class. Personnel Rule 7.18 is imposed on employees of the city of Dallas, not on the population generally. If the city of Dallas refused to hire any individual who had ever failed to pay a just debt, statistics concerning the population as a whole would be relevant. But in the present case the employment practice is applied only to employees of the city of Dallas. Thus the question is whether black *em-*

---

**10.** Plaintiff offered evidence that in 1970 the population of the city of Dallas was 74.2% white and 24.9% black. By contrast 54.4% of the families below the poverty level (defined by the Department of Commerce, Bureau of Census) were Negro. Also 9.9% of the families below the poverty level were Spanish-surnamed families. Further evidence relating to median incomes and other such criteria supports a conclusion that Negroes comprise a disproportionately large segment of the poor people in Dallas.

*ployees* of the city of Dallas fail to pay their just debts more frequently than white *employees* of the city of Dallas. The statistics offered by plaintiff are not helpful in answering this question.

Plaintiff has failed to show that Rule 7.18 has a discriminatory effect on Negroes. Since he has not established a prima facie case, we need not consider whether defendant succeeded in demonstrating a legitimate, nondiscriminatory "business necessity" rationale for the rule. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 678; Griggs v. Duke Power Co., 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158, 164 (1971).

The judgment of the District Court is affirmed.