Charles G. HINES

v.

OLINKRAFT, INC., United Paper Workers International Union, and United Paper Workers International Union Local No. 654.

Civ. A. No. 750599.

United States District Court,
W. D. Louisiana,
Monroe Division.

July 11, 1978.

Stephen J. Katz, Rankin & Yeldell, Bastrop, La., for plaintiff.

Peyton Lacy, Jr., West Monroe, La., G. Phillip Shuler, III, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants Olinkraft, Inc.

Pamela D. Walker, Youngdahl & Larrison, Little Rock, Ark., for Unions.

## OPINION

DAWKINS, Senior Judge.

This action is brought by Charles G. Hines for damages and injunctive relief because of alleged acts of racial discrimination by defendants Olinkraft, Inc. (Olinkraft), United Paper Workers International Union, and United Paper Workers International Union Local No. 654.

A Bench trial was held on May 10, 1978. At the close of plaintiff's case, defendants moved for dismissal under Rule 41(b) F.R. Civ.P. The Union's motion was granted, but a ruling on Olinkraft's motion was reserved until the close of the evidence and receipt of briefs. All briefs now having been filed, we proceed to decision on the merits.

## FINDINGS OF FACT

The plaintiff, Charles G. Hines, is domiciled in Ouachita Parish, Louisiana.

Olinkraft is a Delaware corporation, licensed to do business in Louisiana.

United Paper Workers International Union, the successor to International Brotherhood of Pulp, Sulphite, and Paper Mill Workers, is a labor organization engaged in an industry affecting commerce, and has over fifteen members.

United Paper Workers International Union Local No. 654 the successor of International Brotherhood of Pulp, Sulphite, and Paper Mill Workers Local No. 654, is local agent for the International.

Hines, a black man, was employed by Olinkraft at its Plant No. 40 on August 25, 1972, as a loader in the shipping department. He voluntarily left Olinkraft's employ on August 2, 1973.

On September 14, 1973, Hines filed charges of employment discrimination with the EEOC. He alleged that, solely because of his race, he had been treated unfairly in job assignments, promotions, and lay-off and re-hire consideration. He further complained that the Unions failed adequately to pursue his grievances because of his race. The Commissioner found no substance in the charges but issued a right-to-sue letter on March 19, 1975.

Hines instituted the present action on June 17, 1975. In our ruling of June 4, 1976, we dismissed as untimely all claims for relief based on facts occurring more than one year prior to the date of filing suit, or 180 days prior to filing his charges with the EEOC. Therefore, the only issues now before us are whether Hines was the subject of unlawful racial discrimination with respect to his lay-off on April 26, 1973, and/or his June 5, 1973, re-hire into Olinkraft's Plant No. 47.

During the time Hines worked for Olinkraft, the terms of employment for all employees at Plants 40, 45 and 47 were governed by a labor agreement between the company and United Paper Workers International Union and United Paper Workers International Union Local No. 654. Article X, § 2(a), of the labor agreement provided:

"Section 2—Demotions, Lay-offs and Recalls

(a) In cases of reduction in forces or extended curtailment of production, demotions will be made in the reverse order of promotions with accrued seniority on all jobs previously held, except in cases where an employee has forfeited his seniority because of:

(1) demotion requested voluntarily

(2) demotion because of inability to perform the job

(3) transfer from one line of progression to another line of progression, (except in the Container Division)."

During the Spring of 1973, business curtailments necessitated lay-offs from Plant No. 40 of 22 men, including Hines on July 13. Six, or 27%, of the men were black; 19, or 73%, were white. The blacks laid off represented 16.7% of the total black workforce in Plant No. 40; the whites laid off represented 12.8% of the whites employed in Plant No. 40.

Lay-offs were made in the reverse order of job seniority. The only employee with less seniority than Hines who was retained in Plant No. 40 was Donald Sandifer. Sandifer had bid successfully in November of 1972 for a job as a waste baler, a low-paying, janitorial job not in the line of progression. As such, Sandifer was retained ahead of blacks and whites employed in line of progression jobs. Hines could have bid for the job as waste baler but failed to do so.

In 1968, Olinkraft and the Unions agreed informally to a re-hire policy designed to give employees laid off from one converting operations plant the opportunity to receive preferential treatment with regard to hiring into other converting operations plants where vacancies might exist. Company policy thus was stated:

"When an employee is permanently laid off in one plant and a vacancy occurs in another plant, the laid-off employee may request and shall be given consideration for this vacancy ahead of any applicant from outside of Olinkraft. If the laid-off employee is placed in the vacancy, he will retain his company seniority for any purposes for which company seniority is applied; however, he will begin accruing new job, department and plant seniority in the plant in which he is assigned. If the employee accepts such an assignment, he will forfeit his recall and seniority rights in the plant from which he was laid off."

Laid-off employees initiated this re-hire procedure by requesting of their employee relations supervisor consideration for vacancies at other converting operations plants. The supervisor kept a list of those desirous of consideration and, upon being informed of a vacancy, attempted to reach them by telephone in the order in which they had contacted him.

About the time of his lay-off from Plant No. 40, Hines spoke with Arnie Golden, Olinkraft's employee relations supervisor for Plants Nos. 40 and 47, about re-hire into another facility. The exact dates and circumstances of these discussions are unclear. Golden recalls trying unsuccessfully to contact Hines about a vacancy more than once. Golden was previously acquainted with Hines, having recommended him initially for employment with Olinkraft; Golden testified that he considered Hines a good employee. Approximately five and one-half weeks after being laid off from Plant No. 40, Hines was placed by Golden into Olinkraft's Plant No. 47.

Eight men were rehired into Plant No. 47 after being laid off from Plant No. 40. Their names, race, and dates of lay-off from Plant No. 40 and rehire into Plant No. 47 are shown below.

| NAME | RACE | TERMINATED AT PLANT NO. 40 | EMPLOYED AT PLANT NO. 47 |
|------|------|----------------------------|--------------------------|
| D. E. Sweitzer | W | 2/27/73 | 3/ 5/73 |
| G. C. Blazier | W | 2/27/73 | 2/28/73 |
| R. L. Douzant | B | 2/27/73 | 3/22/73 |
| J. A. Netherland | W | 4/20/73 | 4/23/73 |

| NAME | RACE | TERMINATED AT PLANT NO. 40 | EMPLOYED AT PLANT NO. 47 |
|------|------|------|------|
| Charles G. Hines | B | 4/26/73 | 6/ 5/73 |
| T. L. Lasyone | W | 4/26/73 | 5/ 7/73 |
| W. Morehead | B | 5/21/73 | 5/22/73 |
| M. S. Mayes | W | 5/21/73 | 5/22/73 |

Eleven whites and three blacks were laid off from Plant No. 40 and never rehired into another plant.

The Unions had no control over hiring or reassignment of individuals from plant-to-plant.

## CONCLUSIONS OF LAW

We have jurisdiction over the parties and subject matter of this action and venue is proper. 28 U.S.C. § 1343(3), (4); 42 U.S.C. § 2000e–5(f)(3); 28 U.S.C. § 1391(b).

Olinkraft is an employer within the meaning of 42 U.S.C. § 2000e(b).

It is an unlawful employment practice for any employer to discriminate against any individual with respect to terms, conditions, or privileges of employment because of such individual's race. 42 U.S.C. § 2000e–2(a)(1).

The plaintiff bears the initial burden of making out a *prima facie* case of discrimination. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

There is a total lack of evidence that Hines was laid off in a manner dissimilar from any other employee. The record unmistakably shows that employees were dismissed in reverse order of seniority. There is not the slightest indication that lay-offs on this basis had any impermissibly adverse impact on blacks. See *Teamsters*. Accordingly, we find and hold that plaintiff failed to make out a *prima facie* case of disparate treatment with respect to his April 26 lay-off from Plant No. 40.

Hines further complains he was delayed in obtaining re-employment under Olinkraft's rehire procedure because of racial discrimination.

We previously have discussed the informal system set up by employee relations supervisor Arnie Golden to place laid-off Olinkraft employees into vacancies in other plants. Golden kept a list of employees requesting re-hire consideration and would contact the employees in the order they appeared on the list as vacancies occurred. Golden's list of employees was not preserved. Neither he nor Hines has any record or recollection of when Hines or any other employee requested consideration. Thus, there is absolutely no proof that any white employees requesting re-hire consideration after Hines were given preference.

To show disparate treatment, plaintiff relies upon a comparison of the average delays prior to rehire experienced by the three black and five white employees hired into Plant 47 in 1973, indicating blacks waited an average of 21.7 days and whites 4.4 days.

The only meaningful comparison of delays experienced by the rehired employees which could lead to an inference of racial discrimination would be between employees who requested and were available for rehire at the same time. Between April 26 and June 6, while Hines was out of work, only three positions in Plant No. 47 were filled through the re-hire procedure. Morehead, a black, and Mayes, a white, were rehired the day after their lay-off; Lasyone, a white, was hired 11 days after being laid off. Thus, when Hines was rehired into Plant No. 47 on June 6, only two whites and two blacks had been rehired since May 7.

Statistical comparisons based on samples of two, four, or even eight employees are of doubtful precedential value. *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251 (5th Cir. 1977); *Robinson v. City of Dallas*, 514 F.2d 1271 (5th Cir. 1975); See, *Note, Beyond The Prima Facie Case in Employment Discrimination Law: Statistical Proof And Rebuttal*, 89 Harv.L.Rev. 387 (1975).

Moreover, use of statistics must be conditioned upon the absence of variables which would undermine the reasonableness of the inference of discrimination which might be drawn. *Swint v. Pullman-Standard*, 539 F.2d 77 (5th Cir. 1976). Operation of Olinkraft's re-hire policy was based upon the need of the rehiring plant and the initiative of the laid-off employee. It was not governed by prior seniority rights or date of lay off. Without evidence of when plaintiff or any other employee requested rehire into Plant 47, comparisons of delays prior to actual re-hire are of little or no probative value.

In essence, plaintiff's statistics showing a longer average delay prior to re-hire for blacks are not by themselves sufficient to establish an inference of discrimination. Based upon a sample of, at best, eight employees, with multiple variables, there is great likelihood that such comparisons have no predictive value.

Even if we assume, *arguendo*, that the record indicates a statistical disparity sufficient to set up a *prima facie* case of racial discrimination, Olinkraft has, by a preponderance of the evidence, rebutted that inference. See, *McDonnell Douglas; Turner*. We are convinced that the length of delay experienced by Hines was the result of non-racial factors. Golden testified that he tried unsuccessfully to reach Hines about a vacancy more than once. This alone could account for Hines being out of work for 5½ weeks.

There is no evidence that operation of the Olinkraft re-hire procedure was a pretext for racial discrimination. See, *McDonnell Douglas*. Thus Hines's charges must be found to be purely pejorative, totally lacking in real substance.

Finding that plaintiff has failed to prove a *prima facie* case against Olinkraft, United Paper Workers International Union, or United Paper Workers International Union Local No. 654, the claims against all defendants will be dismissed.