Marietta S. BELL, Plaintiff–Appellant,

v.

CITIZENS FIDELITY BANK & TRUST COMPANY, Defendant–Appellee.

No. 79–3151.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 20, 1980.

Decided Dec. 4, 1980.

Before EDWARDS, Chief Judge, WEICK, Circuit Judge and GIBSON,* District Judge.

ORDER

On receipt and consideration of an appeal in the above–styled case; and

Noting that appellant claims that defendant–appellee bank discharged plaintiff–appellant in retaliation for exercising a federal right expressed in statutory form by filing a voluntary petition for bankruptcy; and

That she also claims that the bank's practice of discharging employees who filed for bankruptcy has a discriminatory impact upon blacks; and

Believing that these issues cannot be satisfactorily disposed of on the summary judgment record,

Now, therefore, the case is remanded to the District Court for trial.

WEICK, Circuit Judge, dissenting:

Since I am of the opinion in view of the extensive record in this case that the issues can be satisfactorily disposed of on the record, I see no reason or purpose for the remand.

In the District Court, the plaintiff conducted extensive discovery by requests for the production of many documents, which requests were complied with. She also made requests for many admissions. In response to the motion for summary judgment, she filed a nine page "Memorandum Of Points And Authorities In Opposition To Defendant's Motion For Summary Judgment." Her counsel filed an affidavit attaching thereto a number of exhibits being designated Exhibits A to G inclusive.

---

* Honorable Benjamin F. Gibson, United States District Judge for the Western District of Mich- igan, sitting by designation.

A very busy District Judge Ballantine gave careful consideration to the issues and wrote two Memorandums. The record in this case consists of 72 pages.

In her brief filed in this court, she states the issues as follows:

I. Whether a private employer can lawfully discharge an employee in retaliation for exercising a federal right specifically expressed in a legislative statute, viz., filing a voluntary petition for bankruptcy.

II. Whether appellant can prove a prima facie case that appellee–employer's practice of discharging employees who file for bankruptcy has a discriminatory impact upon blacks.

## I

With respect to the first issue, the question whether a private employer can lawfully discharge an employee in retaliation for exercising a right specifically granted in a legislative statute, namely, filing a voluntary petition in bankruptcy, involves only a question of law and surely does not require a remand.

There is no provision in the Bankruptcy Act prohibiting a private employer from discharging an employee for filing a voluntary petition in bankruptcy. In fact, Congress in the New Act expressly refused to make unlawful employment discrimination against bankrupts by private employers, although providing in Section 525 for such a prohibition applicable only to public employees. Bankruptcy Reform Act of 1978. P. L. 95–598. Plaintiff's employment was at will and she could be discharged at any time and for no reason. She cites no cases in point to support her contention.

District Judge Ballantine in his Memorandum relied on *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (en banc). Cf. *Marshall v. District of Columbia Government*, 559 F.2d 726 (D.C. Cir. 1977).

## II

It should be noted that in this assignment of error, there is no claim of intentional discrimination but only of discriminatory impact on blacks. The complaint does not even allege discriminatory intention. The action was not brought under Title VII.

In the eight year period of plaintiff's employment at the bank, 1968 to 1976, of the ten (10) employees terminated or asked to resign because of invoking bankruptcy in violation of the bank's rule, only three (3) were black and seven (7) were white. This does not prove either intentional or impact discrimination against blacks. The bank could not very well exempt black employees from the operation of the rule without subjecting itself to a charge of reverse discrimination which could be made by the discharged whites.

The bank's rule which for many years has been embodied in the handbook furnished to all employees at the time of hiring provides:

It is the policy of the Bank to terminate the employment of any employee who declares or takes bankruptcy.

The bank's policy was grounded upon the following considerations.

Bank employees in particular are expected to live within their income and manage their personal finances in a manner which the Bank expects its borrowers to manage their financial affairs. Moreover, many employees of Citizens obtain loans from their employer and where an employee takes bankruptcy it is a reasonable business practice to terminate their employment. In addition, this policy is a part of Citizen's security measures to protect its deposits and depositors. Further, all employees of Citizens must be bonded and the bonding company has advised the undersigned that an individual who has taken bankruptcy may be bondable. This policy, which also prevents embarrassment to individuals as well as the Bank, has been applied to not only rank and file employees but Bank officers as well. (Rec. 23.)

Bell was not discharged until the bank learned that she had filed a voluntary petition in bankruptcy. She later was granted

a discharge in bankruptcy from the payment of her debts.

The Employees Handbook also contains a provision for the discharge of an employee "who receives garnishments from three different sources in a year period of time." In the year of her discharge, Bell had already received one garnishment and she thought that other garnishments would lead to her termination as an employee.

It should be remembered that this suit was not brought under Title VII but under 42 U.S.C. 1981, 1982 and 1985(3). Under the record in this case, intentional discrimination must not only be pleaded, but proved, which it was not. *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Browder v. Tipton*, 630 F.2d 1149 (6th Cir. 1980); *Crawford v. Western Electric Co.*, 614 F.2d 1300, 1309 (5th Cir. 1980); *Greene v. Memphis*, 610 F.2d 395 (6th Cir. 1979) pending in Supreme Court; *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir. 1979); *Detroit Police Officers Association v. Young*, 603 F.2d 671, 692 (6th Cir. 1979) pending in the Supreme Court; *Chicago Police Officers Association v. Stover*, 552 F.2d 918 (10th Cir. 1977).

It is respectfully submitted that we should decide this appeal on its merits without any remand as the record is amply sufficient for that purpose.

In *Curd v. Mondie Forge Co.*, 627 F.2d 1089, 6th Cir. 1980, the employee was discharged for violation of a private employer's rule mandating discharge of any employee who is subjected to more than one garnishment within one year. After Curd had been discharged, the employer received two additional garnishments against him. He claimed that his employer discharged him because he was black, although prior to his discharge and over the period of six or seven years that the rule had been in effect, three white and three black persons had been discharged for violation of the rule. We held that there was not an iota of evidence that the employer applied the rule any differently against either of the races and that no substantial or significant statistical evidence had been offered that the rule had any different impact on white persons than it did on black.

· The District Court in the present case relied on *Robinson v. City of Dallas*, 514 F.2d 1271, 1273–1274 (5th Cir. 1975) which involved seven employees, three of whom were black, that were terminated in the relevant period. The court stated: "[S]uch small numbers are insufficient to support any conclusion as to whether the rule has a discriminatory effect." Id. at 1273.

In determining discriminatory impact, we do not look to statistical information from the entire United States, or the Commonwealth of Kentucky or even Jefferson County, Kentucky. We look to all of the employees of the bank of whom 9.6% were black. *Robinson v. City of Dallas, supra, Harper v. T.W.A.*, 525 F.2d 409 (8th Cir. 1975). It therefore is clear that the bank applied the rule fairly and without discrimination.