Mary Louise HEFFERNAN

v.

WESTERN ELECTRIC COMPANY, INC.

Civ. A. No. C79–2280A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 17, 1981.

Philip M. Williams, James B. Gurley & Associates, Atlanta, Ga., for plaintiff.

Susan A. Cahoon, Edmund M. Kneisel, Kilpatrick & Cody, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This case is presently before the Court for findings of fact and conclusions of law

at the completion of non-jury trial. After considering the evidence and arguments of counsel, the Court hereby finds and concludes as follows:

This is a Title VII case. Plaintiff was formerly employed by Defendant as an "engineering associate." Her employment was terminated on January 30, 1976, when she was selected by management as one of those employees whose jobs would be terminated in a company-wide layoff.[1] All employees who had been with the company ten years or less were candidates; however, the layoffs within that bracket were not in reverse order of seniority. Rather, supervisors in the various sections of the company were asked by management to rank their employees from least effective to most effective. From those lists management chose for layoff persons with less than ten years experience who were rated near the top of the various "least effective" lists.

At that time, Plaintiff had worked for Defendant for over seven years. In her particular section, there were thirteen engineering associates with ten years or less experience. Ten were males and three were females. Nine of the men had less seniority than did Plaintiff. The decision was made to lay off two people in Plaintiff's section (the "Florida cross-bar section"). The two chosen were Plaintiff and another female.

During the several years immediately preceding Plaintiff's termination, Defendant had an employee rating system whereby employees in Plaintiff's job category were rated "top," "good," or "marginal." Approximately 50% of the employees were rated good; the other two ratings were reserved for the 25% of employees who fell at either end of the scale. Plaintiff was rated "good" at all times. She received raises of about eight percent (8%) per year during each year of her employment with Defendant, which raises were based on a combination of cost-of-living and job performance considerations. On January 1, 1976, just 30 days before her termination, she received her largest raise ever from Defendant.

The evidence regarding Plaintiff's job performance was disputed. Plaintiff's supervisor stated he considered Plaintiff the least effective[2] employee in her section because she was less productive than others. Also, he stated she had less initiative than her male counterparts. The testimony also indicated, and the Court finds, however, that Plaintiff had high proficiency in her area of special expertise[3] and that her group leader Mr. Pennington had such confidence in the accuracy of her work that he did not review it with the same frequency or in as detailed a manner as he did that of one of the other male engineering associates.

The evidence further showed that during the year immediately preceding her layoff, Plaintiff was under the treatment of a psychiatrist for an unspecified emotional problem. Defendant's supervisor indicated he had noticed Plaintiff daydreaming on a couple of occasions. However, the Court's finding, based on the unspecific and limited nature of this testimony, is that the quality of Plaintiff's work was not adversely affected during this time.

The Court first finds that Plaintiff made out a prima facie case of sex discrimination. She is a member of a protected group; she sought to retain a job which she was qualified to perform; she was laid off; and at the same time she was laid off, the employer retained male employees having less experience and less seniority than she did. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**1.** The layoff in question was the last of a series of layoffs whereby a substantial percentage of Defendant's work force was laid off due to lack of work.

**2.** One male was ahead of Plaintiff on the list; however, he had more than ten years' seniority and therefore was not laid off.

**3.** Apparently there was some subspecialization, at least on an informal basis, within the Florida cross-bar section. It was not clear from the evidence how many others in the section did work of a type comparable to Plaintiff's.

■ Having thus found, an inference of discriminatory motive in aid of Plaintiff's claim arises; further, it is incumbent upon the employer to come forward to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Board of Trustees v. Sweeny*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) *citing Furnco Construction Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). This burden does not require the employer to persuade the Court that it had legitimate nondiscriminatory reasons for the action it took. Rather, the employer's burden is that of producing evidence of its reasons; specifically, the Supreme Court has said that the employer must provide a "clear and reasonably specific" statement of its reasons. *Texas Department of Community Affairs v. Burdine*, —— U.S. ——, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer produces such evidence, the burden then falls to Plaintiff to persuade the Court that the employer's proffered explanation lacks a factual basis and is a pretext. Thus, the Plaintiff bears the burden of persuasion with respect to both lack of factual basis for the employer's action and the issue of discriminatory motive. *Id.* 101 S.Ct. at 1096.

■ The Court concludes that Defendant met its burden of production. As noted above, Defendant classified Plaintiff as one of those "least effective" in her section. This, in the Court's opinion, is not clear and reasonably specific per *Texas Department of Community Affairs v. Burdine*, but here the Defendant went on to state that Plaintiff was less productive than others in her section. This does constitute a sufficient articulation of the employer's reason to satisfy the employer's burden.

The Court now turns to consideration of whether or not the evidence in the case showed that the employer's stated reason was lacking in factual basis or pretextual.

■ The evidence at the trial on the issue of whether or not Plaintiff was less qualified than her male counterparts was on the whole, rather unspecific. Plaintiff did produce credible evidence that her employer had greater confidence in the accuracy of her work than that of one of her male counterparts. However, it was unclear to the Court where Plaintiff stood amongst the other males in her section. The Court finds that the evidence did not show Plaintiff was better qualified than any of the males who were retained. Despite the favorable inference Plaintiff derives from her greater seniority, taking into account the fact that all the persons in the pool from whom the layoffs were made were presumptively qualified, the Court finds that the fact of Plaintiff's seniority is not enough to carry her burden of proof, absent substantially more specific comparative evidence than was before the Court.[4]

■ Even though Plaintiff failed to establish that she was better qualified than her retained colleagues, she may still prevail if she can show that Defendant's stated reason for the layoffs (i. e., insufficient work) is a mere pretext for discrimination. The only evidence suggesting the possibility of pretext on Defendant's part was the testimony of Plaintiff's witness William Waddick (a Western Electric employee) who stated that a lot of people thought the final layoff of January 1976 was not necessitated by Defendant's business requirements. However, the testimony was so general, the foundation for the testimony so unapparent, and the witness's manner of responding so evasive, that the Court is unable to credit his testimony. The Court finds the evidence does not support a finding of pretext.

For the foregoing reasons, the Court finds that Plaintiff has not shown that she received disparate treatment at Defendant's hands; her disparate treatment claim fails.

■ The Court now turns to a consideration of Plaintiff's claim if it is characterized as a "disparate impact" claim. Claims

---

4. For example, the Court does not know how much less senior the retained males were, and what their past performance records were. Neither was there any objective evidence concerning Plaintiff's productivity relative to that of her colleagues.

of this type are not affected by the Supreme Court's ruling in *Burdine, see* footnote 5, 101 S.Ct. at 1093. A plaintiff makes out a disparate impact case by showing that a facially neutral employment criterion utilized by Defendant has a discriminatory impact on a protected class to which Plaintiff belongs. *Teamsters v. United States,* 431 U.S. 324, 335–336, and n. 15, 97 S.Ct. 1813, 52 L.Ed.2d 396 (1977). In the Court's opinion, the "least effective" criterion utilized by Defendant constitutes a facially neutral criterion which has obvious potential for discriminatory, albeit unintentional, application to women and minorities. The question raised here is whether or not the, evidence demonstrates a disproportionate impact on members of a protected class. Looking first at the statistics within Plaintiff's own section of the company (Plaintiff's Exhibit 8), one easily sees a disproportionate impact of the layoffs on women. Specifically, the female work force within that 13-person section was reduced by 66.6% by the January 30, 1976 layoff; the male contingent within the section was reduced by 0%. The question then becomes whether the group of employees is large enough to be a meaningful sample within the company. The Court finds that this size group is not large enough for such purpose. *See Robinson v. City of Dallas,* 514 F.2d 1271 (5th Cir. 1975). Plaintiff has introduced evidence of the effect of Defendant's layoffs on the sexual composition of Defendant's engineering associates company-wide; the Court believes this is a sufficiently large population for comparison purposes. However, having looked at the pertinent statistics (Plaintiff's Exhibit 7), it appears to the Court that the extent of reduction of female engineering associates company-wide in the January 30, 1976[5] layoff does not demonstrate a statistically significant disproportionate impact. Specifically, the Court finds that the 1.8% decrease in female employment in the engineering associate ranks as a result of the January 1976 layoff, is not significant enough for Plain-

tiff to make out a case based on disparate impact theory. Therefore, the Court declines to find in Plaintiff's favor on this theory.

In light of the foregoing, the Court DIRECTS that judgment be entered in Defendant's favor, with costs cast on Plaintiff.

---

5. The Court has not considered whether the overall reduction effected by the entire series of layoffs is statistically significant. This is because the evidence did not show whether the "least effective" criterion was used prior to the January 1976 layoff.