In re Gary L. **WAGNER** and Martha A. Wagner, Debtors.

Gary L. **WAGNER** and Martha A. Wagner, Plaintiffs,

v.

**PIPER INDUSTRIES, INC.**, a Tennessee corporation, Piper Industries of Texas, Inc., a Texas corporation, Paul Piper, Jr., an individual, Jay Rigby, an individual, Norbert Starr, II, an individual, Michael A. Barragan, an individual, and Gardere and Wynne, a law partnership, Defendants.

Bankruptcy No. SA 84–03985 JB. Adv. No. SA 87–0489 JR.

United States Bankruptcy Court, C.D. California.

Feb. 11, 1988.

Jeffrey M. Trinklein of Gibson, Dunn & Crutcher, Newport Beach, Cal., for defendants.

Christopher L. Blank of Drummy, Garret, King & Harrison, Costa Mesa, Cal., for plaintiffs.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Debtors brought this action against defendants for violation of §§ 362, 524 and 525 of the Bankruptcy Code. Defendants moved to dismiss for failure to state a cause of action and to strike certain portions of the complaint (the "Motion"). On November 16, 1987, I heard the matter and took it under submission.

## JURISDICTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

When deciding a motion to dismiss, facts stated in the complaint are accepted as true. *Mince v. DeKalb County, Georgia*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Debtors' complaint alleges the facts described below.

Debtors formed Wagner Systems, Inc. ("WSI") in 1982. Operating from the West Coast, WSI produced and sold plastic containers. With rapid growth, WSI from the outset experienced cash flow problems.

Defendants Piper Industries, Inc., Piper Industries of Texas, Inc., and Piper Casepro (collectively referred to as the "Piper Entities") also produced and sold plastic containers. Defendant Paul Piper, Jr. ("Piper"), a principal acting for the Piper Entities, expressed interest in purchasing WSI and making it part of its distribution network.

By this time, WSI's cash flow problems had worsened. Debtors had to give personal guarantees and deeds of trust on their properties to obtain credit for WSI from vendors and financial institutions.

Piper, on behalf of the Piper Entities, agreed to loan debtors funds to pay their personal obligations incurred to fund WSI. In return, Wagner executed a promissory note, dated October 31, 1983, for $360,000 (the "First Note") and executed deeds of trust and security agreements on various properties owned by debtors. Mr. Wagner also agreed to work for the Piper Entities and sell their products on the West Coast.

On July 18, 1984, WSI filed a petition under Chapter 11. On October 3, 1984, debtors filed their petition under Chapter 7. After debtors' filing and while the automatic stay was in effect, Piper insisted that debtors sign a new promissory note covering the pre-petition debt (the "Second Note"). Piper conditioned his signing a new employment agreement with Wagner on debtors signing the Second Note.

Debtors signed the Second Note on November 1, 1984 for $419,419. An employment agreement was also executed. Neither the Second Note nor the employment agreement were approved by the court.

In February 1985, debtors received their discharge. The obligation of debtors under the First Note was, therefore, discharged. During the following two years, Wagner worked for the Piper Entities. The Piper Entities during that time withheld money from Wagner's earnings to pay the Second Note.

From September to December 1985, Piper and the Piper Entities modified Wag-

ner's employment contract to reduce the amount of commissions paid and the size of Wagner's sales territory. In return, Wagner received a $200,000 credit on the Second Note.

Late in 1985, Piper and defendant Jay Rigby (also a principal in the Piper Entities) threatened to foreclose on debtors' residence unless debtors sold their house and remitted cash proceeds over $35,000 to the Piper Entities to pay the Second Note.

On September 16, 1986, defendant Norbert Starr, II, an attorney in the law firm of Gardere and Wynne sent a letter to debtors on behalf of the Piper Entities, demanding payment on the Second Note. In addition, defendant Michael A. Barragan, also an attorney at Gardere and Wynne, commenced a lawsuit in a Texas state court against debtors on the Second Note.

On August 6, 1987, debtors filed a complaint against all the defendants, alleging that their actions constituted violations of §§ 362, 524 and 525 of the Bankruptcy Code (the "Complaint").

In response, defendants brought the Motion. In moving to dismiss, defendants argue that § 362 and § 524 do not provide private causes of action; § 525 is not applicable to private entities; the law firm defendants had no relationship with debtors that could, as a matter of law, result in liability; and an adversary proceeding is an improper method to redress debtors' alleged claims for relief.

In moving alternatively to strike portions of the Complaint, defendants contend that debtors cannot request damages for a violation of the stay after the date of discharge; debtors cannot request relief for acts supposedly violating the discharge injunction that occurred before the date of discharge; and certain relief sought by debtors is inappropriate and should be stricken.

## DISCUSSION

I. *Motion to Dismiss*

  A. Section 362 Cause of Action

Section 362(a) provides in part:

Except as provided for in subsection (b) of this section, a petition filed under section 301, 302, 303 of this title, or on application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; ...

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

Based on the facts stated in the Complaint, debtors allege a violation of § 362(a). Defendants respond that debtors have no private cause of action to collect damages under § 362.

Section 362(h) of the Bankruptcy Code became law through the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353 ("BAFJA"). It provides that: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." BAFJA was enacted on July 10, 1984 and became effective on cases filed 90 days after enactment. The effective date of BAFJA was, therefore, October 8, 1984. Debtors filed their bankruptcy petition on October 4, 1984. Accordingly, § 362(h) is inapplicable to this proceeding.

Because pre–BAJFA law applies, debtors cite *In re Computer Communications*, 824 F.2d 725 (9th Cir.1987), for the legal principle that damages are appropriate to redress a § 362 violation. In *Computer Communications*, the debtor brought an action against defendant for wrongfully repudiating a contract to purchase equipment from the debtor and violating the automat-

ic stay. The act occurred after the automatic stay was in effect. The bankruptcy court held that defendant violated § 362 and awarded general and punitive damages to the debtor. The district court on review affirmed the general damage award, but reversed the punitive damages award. In affirming the district court's decision, the Ninth Circuit held that: "A party who violates the automatic stay may be held in contempt and the court may award damages to compensate the other party for actual loss suffered.... We hold that awarding damages to debtor for [defendant's] violation of the automatic stay was within the discretion of the bankruptcy court." *Id.* at 731.

The petition in *Computer Communications* was filed before the effective date of BAFJA. The court expressly recognized the inapplicability of § 362(h) stating "[w]e do not rely on [§ 362(h)] because it was not in effect when this action was filed." *Id.* n. 3.

Defendants respond that the recent holding *In re Sequoia Auto Brokers*, 827 F.2d 1281 (9th Cir.1987), effectively overrules *Computer Communications.* In *Sequoia*, the bankruptcy court held the debtor in contempt for failing to prepare a statement of affairs and master mailing list. The district court remanded the matter to the bankruptcy court to determine whether the bankruptcy court wanted to impose civil contempt sanctions. The Ninth Circuit vacated and remanded the proceeding to the district court with directions to vacate the bankruptcy court's order for lack of subject matter jurisdiction. The court held that bankruptcy judges have no inherent contempt powers because they are not Article III judges. Furthermore, Congress did not expressly or impliedly confer contempt power on bankruptcy judges. Defendants argue, therefore, that because a bankruptcy judge is without contempt power and the holding in *Computer Communications* is based on a contempt order of a bankruptcy judge, *Computer Communications* should be ignored.

Defendants misread *Sequoia* and its impact on this proceeding. *Sequoia* holds that a bankruptcy judge lacks the inherent power to issue a contempt order. *However, the district court has this inherent power.* Recognizing the uncertainty surrounding this issue of contempt power in the bankruptcy courts, 9020 of the Bankruptcy Rules was recently amended (effective August 1, 1987) to provide an oversight role for the district court when a bankruptcy judge issues a contempt order. Rule 9020 requires that the bankruptcy judge hold the contempt hearing and serve the order on the party held in contempt. The order becomes final unless the party served objects within 10 days. If objections are filed, the order is reviewed *de novo* by the district court in accordance with 9033 of the Bankruptcy Rules. The court in *Sequoia* expressed no opinion whether Rule 9020 is valid. I will follow Rule 9020 if a contempt order is appropriate in this matter. Even *Sequoia* holds that I should hear the matter and certify the facts and the finding of contempt to the district court for review *de novo. Id.* at 1291. Subject to Rule 9020, I have jurisdiction to hear the matter and award damages if defendants violated § 362.

Accordingly, defendants' motion to dismiss the § 362 cause of action is denied.

**B. Section 524 Cause of Action**

■ Section 524 of the Bankruptcy Code is the post-discharge analogue of § 362. Section 524(a) provides in part that:

A discharge in a case under this title—

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

. . .

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a

community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(c)(1) of this title, or that would be so excepted, determined in accordance with the provisions of section 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

Like pre–BAFJA § 362, no express cause of action is set forth in the Bankruptcy Code for a violation of § 524. However, applying the principles of *Computer Communications*, I see no reason to distinguish between § 362 and § 524; remedial damages are appropriate whenever a violation of either provision takes place. Defendants' motion to dismiss plaintiff's § 524 cause of action is, therefore, denied.

### C. Section 525 Cause of Action

■ Section 525 of the Bankruptcy Code protects a person from discriminatory treatment because the person was a bankrupt. Section 525(a) was enacted in 1978 and provides in part that:

> ... a governmental unit may not ... deny employment to, terminate the employment, or discriminate with respect to employment, a person that is or has been a debtor under this title ... solely because such bankrupt or debtor is or has been a debtor under this title ..., has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is discharageable in the case under this title....

Section 525(b) was enacted in 1984 with BAFJA and provides in part that:

> No private employer may terminate the employment of, or discriminate with respect to employment against, an inividual who is or has been a debtor under this title ... solely because such debtor or bankrupt—
>
> (1) is or has been a debtor under this title
>
> .    .    .    .    .

> (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
>
> (3) has not paid a debt that is dischargeable in a case under thit title....

Section 525(b) was added to the Bankruptcy Code to prohibit employment discrimination by a private employer. This section, however, is inapplicable to this case for the same reason § 362(h) was inapplicable.

Because defendants are private and not governmental entities, they argue that pre–BAFJA § 525 does not apply to them. In response, debtors contend that pre–BAFJA § 525 encompasses a cause of action for private employment discrimination. Debtors point to the legislative history of pre–BAFJA § 525 and case law to support their position.

Section 525, as stated in the legislative history, "codifies the result of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), which held that a state would frustrate the Congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a drivers license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy." House Report No. 95–595 p. 366 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6322. Debtors argue that *Perez* prohibits employment discrimination against a bankrupt whether the act was performed by a public or private entity. Debtors quote the following legislative history (absent the part emphasized) to support this contention:

> In addition, [§ 525] is not exhaustive. The enumeration of various forms of discrimination against former bankrupts is not intended to permit other forms of discrimination. The courts have been developing the *Perez* rule. This section permits further development to prohibit actions *by governmental or quasi-governmental organizations that perform licensing functions, such as a state bar association or a medical society, or by other organizations* that can seriously affect debtor's livelihood or fresh

start.... House Report at 366–367, U.S. Code Cong. & Admin.News 1978, p. 6323. (Emphasis added.)

Debtors' attorney omitted the underlined part of the above text. Without the omitted language, debtors have a colorable argument. However, a reading of the full text leaves no doubt that Congress originally adopted § 525 to protect against a governmental entity using its power to discriminate against a bankrupt. Later, a more general concern developed and through § 525(b) Congress prohibited discrimination by a private employer.

The language of § 525(a) is also unambiguous. It says "a *governmental unit* may not...." (Emphasis added.) Debtors make a futile attempt to broaden what Congress intentionally kept narrow.

The cases which debtors cite to support their § 525 contention are likewise unpersuasive. In *Bell v. Citizens Fidelity Bank & Trust Co.*, 636 F.2d 1119 (6th Cir.1980), the court said that "Congress in the New Act expressly refused to make unlawful employment discrimination against bankrupts by private employers, although providing in Section 525 for such prohibition applicable only to public employees." *Id.* at 1120. In *In re Olson*, 38 B.R. 515 (Bankr.N.D.Iowa 1984), the court mentioned the possibility that § 525 could be extended to private employers, but emphasized its conjecture was not essential to its holding. Although § 525 was applied in *In re Green*, 29 B.R. 682 (Bankr.S.D.Ohio 1983), and *In re Parkman*, 27 B.R. 460 (Bankr.N.D.Ill.1983), *Green* involved a private employer acting as a vicarious agent of the state and *Parkman* entailed a private university which was treated as a quasi-governmental entity. The courts in these holdings found governmental involvement on facts which distinguish those cases from the case at hand.

The cases, however, that limit the application of pre–BAFJA § 525 to private entities are many. For example, *In re Amidon*, 22 B.R. 457 (Bankr.D.Mass.1982); *In re Barbee*, 14 B.R. 733 (Bankr.E.D.Va. 1981); and *In re Coachlight Dinner Theater of Nanuet, Inc.*, 8 B.R. 657 (Bankr.S.

D.N.Y.1981). In *Wilson v. Harris Trust and Savings Bank*, 777 F.2d 1246 (7th Cir.1985), the court explained that "Congress would not have amended Section 525 to provide that the prohibitions now apply to private employers if it thought private employers were already barred from discriminating against debtors under prior Section 525." *Id.* at 1249.

Plaintiffs have failed to state a claim upon which relief may be granted under § 525. Plaintiffs are outside the scope of pre–BAFJA § 525. Defendants' motion to dismiss debtors' claim for relief under § 525 is, therefore, granted.

D. Dismissal of Claims against the Law Firm Defendants

The law firm defendants move to dismiss all cause of action against them, asserting that their actions, namely sending the demand letter and filing the Texas state court action, as a matter of law, do not constitute violations for which they should be punished. With the dismissal of the § 525 claim, this leaves causes of action under §§ 362 and 524.

■ The alleged acts of the law firm defendants occurred after the bankruptcy discharge. Because the automatic stay terminates upon discharge, § 362 could not apply to the law firm defendants. See § 362(c)(2)(C). The motion to dismiss the § 362 cause of action against the law firm defendants is, accordingly, granted.

■ Turning to the § 524 cause of action against the law firm defendants, they contend that their actions to collect on the indebtedness occurred before they had actual notice of the discharge and they ceased collection efforts when they received notice of the discharge. In the Complaint, debtors allege that the law firm defendants continued efforts to collect after learning of the discharge, including sending a demand letter dated September 16, 1986 and filing and attempting to serve a lawsuit. As previously noted, the allegations in the Complaint must be accepted as true for purposes of the Motion. Declarations from the law firm defendants disclaiming knowledge and an intent to violate

the discharge injunction are irrelevant. The pleading is sufficient to establish a § 524 cause of action because it alleges violations after the law firm defendants had knowledge of the discharge.

The law firm defendants' motion to dismiss the cause of action under § 524 is, accordingly, denied.

### E. Procedural Propriety of Plaintiffs' Claims

■ Defendants' last argument in support of their motion to dismiss is that debtors' claims for relief are based on contempt and they, therefore, should have been brought this action as a motion and not as an adversary proceeding.

This argument is not persuasive. An adversary proceeding provides the parties with more, not less, procedural protections than what are available in a contested matter by way of motion. While a request for a finding of contempt may be brought by motion, neither the Bankruptcy Code or Rules mandates it. Defendants' procedural argument is denied.

### II. *Motion to Strike*

Fed.R.Civ.P. 12(f) authorizes the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." At the outset, it should be noted that motions to strike are not favored and are infrequently granted. *In re OPM Leasing Services, Inc.*, 35 B.R. 854, 863 (Bankr.S.D.N.Y. 1983). As stated in *Moore's Federal Practice,* ¶ 12.21[2] (2nd Ed. 1987),

> Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied. Even if the allegations are redundant or immaterial, they need not be stricken if their presence in the pleading cannot prejudice the adverse party.

■ Defendants contend that debtors cannot obtain damages for an alleged violation of the automatic stay occurring after the date of discharge and, conversely, obtain damages for an alleged violation of the discharge injunction occurring before the date of discharge. Defendants ask that debtors be required to plead the alleged acts associated with each cause of action. It is true debtors have not correlated each alleged act with a specific remedy. However, a motion to strike is not the appropriate method to resolve confusion or ambiguities in the pleadings. Defendants can move for a more definite statement if they cannot ascertain the alleged acts supporting each cause of action.

Defendants also move to strike because certain relief requested is inappropriate. Specifically, defendants assert that debtors cannot recover amounts *voluntarily* paid on the Second Note, are not entitled to the release of any liens held by the Piper Entities, and are not entitled to punitive damages.

■ A motion to strike is proper to eliminate improper requests for relief. See *Grohal v. Stauffer Chemical Co.*, 385 F.Supp 1267 (N.D.Cal.1974), *Johnson v. American Aviation Corp.*, 64 F.R.D. 435 (D.N.D.1974).

■ Regarding the issue of payments on the Second Note, the motion to strike is denied because debtors allege these payments were not voluntarily made. Debtors' request to avoid defendants' lien is improper since unavoided liens survive a bankruptcy. Therefore, defendants' motion to strike this remedy is granted. Finally, on the punitive damages issue the court in *Computer Communications* affirmed the general damage award but reversed the punitive damage award. *Supra* at 731. Also see *In re Zartun*, 30 B.R. 543, 546 (9th Cir. BAP. 1983). Following *Computer Communications*, I find that an award of punitive damages is an inappropriate remedy for a violation of the automatic stay and the discharge injunction. Accordingly, defendants' motion to strike plaintiffs' request for punitive damages is granted.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. The within memorandum opin-

**620**

ion shall constitute my findings of fact and conclusions of law.

AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS § 362 CAUSE OF ACTION; DENYING DEFENDANTS' MOTION TO DISMISS § 524 CAUSE OF ACTION; GRANTING DEFENDANTS' MOTION TO DISMISS § 525 CAUSE OF ACTION; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STRIKE

In accordance with the findings of fact and conclusions of law set forth in my memorandum opinion previously filed, it is

ORDERED that defendants' motion to dismiss debtor § 362 cause of action as to the defendants Norbert Starr, II, Michael A. Barragan, and Gardere and Wynne is granted;

IT IS FURTHER ORDERED that defendants' motion to dismiss debtors' § 362 cause of action against the remaining defendants is denied;

IT IS FURTHER ORDERED that defendants' motion to dismiss debtors' § 524 cause of action is denied;

IT IS FURTHER ORDERED that defendants' motion to dismiss debtors' § 525 cause of action is granted;

IT IS FURTHER ORDERED that defendants' motion to strike debtors' claims for relief for return of payments alleged to have been voluntarily made is denied;

IT IS FURTHER ORDERED that defendants' motion to strike claims for relief for avoidance of liens on certain properties of debtors and for punitive damages is granted.